GRIGG v MICHIGAN NATIONAL BANK

Docket No. 59308. Argued March 7, 1978 (Calendar No. 5).—Decided
January 17, 1979.

Sarah Grigg brought an action on behalf of herself and other
Michigan BankAmericard holders who had incurred certain
finance charges between 1969 and 1971 to enjoin Michigan
National Bank from charging interest higher than permitted
by statute and to recover double damages under Federal bank-
ing law. The Ingham Circuit Court, Sam Street Hughes, J.,
granted summary judgment for the defendant on the ground
that the Federal banking law did not permit the plaintiff to sue
for double damages in a representative capacity. The Court of
Appeals, Quinn, P.J., and Bronson and O'Hara, JJ., in an
unpublished per curiam opinion, reversed and remanded for a
determination whether the plaintiff had met the requirements
for initiating a class action (Docket No. 15891). The circuit
court, on remand, James T. Kallman, J., found that the plain-
tiff could not proceed as a representative of the named class

REFERENCES FOR POINTS IN HEADNOTES

[1] 59 Am Jur 2d, Parties § 90.
[2] 59 Am Jur 2d, Parties §§ 58, 75.
[3] 59 Am Jur 2d, Parties § 67.
[4] 59 Am Jur 2d, Parties § 57.
[5, 7] 59 Am Jur 2d, Parties §§ 51, 62.
[6] 59 Am Jur 2d, Parties § 81.
[8, 15] 59 Am Jur 2d, Parties § 91.
[9] 59 Am Jur 2d, Parties §§ 71, 73.
[10] 59 Am Jur 2d, Parties § 143.
[11] 59 Am Jur 2d, Parties § 63.
[12, 13, 18] 59 Am Jur 2d, Parties § 47.
[14] 45 Am Jur 2d, Interest and Usury § 264.
   Statute denying defense of usury to corporation. 63 ALR2d 924.
[16] 7 Am Jur 2d, Attorneys at Law §§ 235, 238, 242.
[17] 59 Am Jur 2d, Parties § 53.
[19] 59 Am Jur 2d, Parties § 86.
   Time within which right to intervene may be exercised. 37 ALR2d
   1306.
[20] 59 Am Jur 2d, Parties § 83.
[21] 59 Am Jur 2d, Parties §§ 55, 56.

and that the plaintiff's own claim for damages was less than the amount in controversy required for circuit court jurisdiction. The plaintiff elected not to proceed in district court and the complaint was dismissed. The Court of Appeals, Allen, P.J., and D. E. Holbrook, Jr., and E. H. Papp, JJ., affirmed (Docket No. 25038). Plaintiff appeals. *Held:*

1. The group of persons whom a plaintiff seeks to represent in a class action must be identifiable at the time of judgment. The fact that the membership of the class may change during the litigation does not render the group unidentifiable. In the instant case the plaintiff describes the group as "all other customers of Michigan National Bank who have incurred interest charges" within the two years before this action was filed. The defendant possesses account records for each of its credit card holders which identify the members of the group, except perhaps 10% for which names and last known addresses are not available for miscellaneous reasons. Therefore, this group is sufficiently identifiable for a class action, although with great difficulty as to individuals.

2. Over 750,000 people held the defendant's credit cards at one time or another during the two-year period. The defendant estimates that approximately one-third of the cardholders never incurred finance charges under their agreements with the defendant because they always paid their bills in full within 25 days of their "billing date". The number of these 500,000 cardholders who might ultimately be included in the class (excluding corporate and business cardholders, and persons whose accounts were purchased from retail stores, for example) could be sufficiently large to satisfy the requirement that the number of persons in the class must be so large that it would be impracticable to bring them all before the court.

3. A person seeking to represent a class in a class action must be a member of the class. The plaintiff alleges that she was a cardholder from 1967 through June, 1971 and that she incurred finance charges for each of the complained of billing practices, and so is a member of the class.

4. The requirement that the class be adequately represented is an attempt to insure that the rights of the absent class members will be protected. The spurious class action (an action in which the rights of the class members are several, the connection between them being a common question of law or fact) is a form of permissive joinder of the parties. The judgment binds only those similarly situated persons who affirmatively indicate to the court their desire to be included in the class ("opt in"). This insures maximum protection of the rights

of absent class members in the cases where they need it most, cases in which the only connection between the members of the class is a common question of law or fact, and there is less reason for finely drawn surrogate protection by the courts of any rights of absent class members in determining the adequacy of the plaintiff's representation of the class than if, for example, the final judgment would bind all members of the class who do not affirmatively indicate that they wish to be excluded from the class ("opt out").

5. When a judgment will bind a given person (e.g., when those not "opting out" of a Federal class action are included in the judgment), the best notice practicable under the circumstances is required, including personal service by mail if the person's name and address are known or easily ascertainable. However, this does not require that notice must also be sent to persons not affected by the judgment. In Michigan notice is not mandatory in spurious class actions as a prerequisite to maintaining the action, because only those opting in are bound by the judgment. The Michigan court rules clearly indicate that notice is not mandatory in spurious class actions. The costs of any notice which the court orders, however, must be borne by the plaintiff.

6. The relationship between a class representative and an attorney handling the class action can be the basis for a finding that the requirement of adequate representation has not been met if that relationship would impair the representation of the absent class members. The plaintiff in the instant case once worked as a legal secretary for the law firm which represents her. The plaintiff knew before she asked her attorneys to represent her that the same attorneys were also representing other plaintiffs in class actions which challenged other bank credit card operations. The same attorneys filed another class action very similar to this one at the same time. These facts would justify a searching examination of the relationship between the plaintiff and her attorneys, and if the examination revealed that the relationship would interfere with representation of the class, the class portion of the suit could be dismissed. In addition to the option of dismissal, on remand the trial court may wish to consider requiring the plaintiff to post security to protect the interests of the class.

7. The complaint raises three questions of law common to the class which affect the members' rights of recovery in the same manner and which can all be answered without reference to individual account records or to any other individual differences between the class members: (1) Was it lawful for the

defendant to charge 1.5 percent per month on its credit card accounts before the effective date of the statute which specifically allowed this rate? (2) Did Michigan law permit the defendant to charge a daily rate of interest that resulted in a cyclical rate of 1.5283 percent in a 31-day billing cycle, under 1.5 percent in other cycles, and less than the 18 percent permitted annually? (3) Did Michigan law permit the defendant to add unpaid finance charges into the principal amount due and thereafter impose a finance charge on the whole sum, although applying any payment first to the unpaid finance charges?

8. The requirement that a class action must promote "the convenient administration of justice" is an outgrowth of the equitable heritage of class actions and the realization that there are practical limitations on the judiciary's capability to resolve disputes. A court must take into account the practical problems that will arise if the case is allowed to proceed on a representative basis. Two major practical problems will arise if this case is allowed to proceed as a class action and the plaintiff ultimately prevails on the merits. The first problem is the identification of the BankAmericard holders who are actually entitled to some recovery. The second is the computation of exactly how much money, if any, each such cardholder would be entitled to receive, including the computation of counterclaims alleged on approximately 20,000 accounts.

Assuming that the accounts must be reviewed manually and that other proofs of the identity of class members would be required, it is still not a necessary conclusion that the process would be extremely burdensome. The only accounts that would have to be examined are the accounts of those persons who chose to opt in. The persons who did not affirmatively join would not be involved in the case. If only a small number of cardholders should opt in, the burden would be much less than that described by the defendant. There might not even be enough to constitute a viable class in light of problems in pursuing the case on a representative basis. This would be a decision for the trial judge. There is no way of knowing now how many cardholders might opt in if given the opportunity. It cannot be said that no matter how few cardholders opt in, the practical burden of identifying the cardholders entitled to relief would be so great that the case cannot proceed on a representative basis.

The burden of computing individual damages would depend upon how many cardholders opted in and how many of those, if any, would be found eligible. At this point there is no way of knowing how great this burden might be. It is also not known

if there would be defenses or counterclaims against any of the persons who might choose to opt in.

9. There are ways to prevent abuse of the class action device that do not involve precluding all of the class members, some of whom may legitimately wish to sue, from proceeding on a representative basis. First, depending upon the number of legitimate class members who opt in, the court may dismiss the class portion of the suit. Second, the court is not bound by any fee agreement entered into between the representative plaintiff and her attorneys, except as to her personal contingent fee contract.

10. The practical burdens involved in allowing this case to proceed on a representative basis may preclude the plaintiff from suing on a representative basis, but the judgment cannot be made intelligently on the basis of the existing record. The decision of the Court of Appeals is reversed and the case is remanded to the circuit court with the following instructions:

(1) The plaintiff, at her expense, may issue such notice as she wishes or as the court directs;

(2) The court shall set a reasonable time period within which class members must opt in in order to be *included* in the case;

(3) After the time period set by the court has expired and after such briefing and argument as is deemed necessary by the court, the court shall rule on the question whether allowing the case to proceed on a representative basis will promote the convenient administration of justice, in light of the principles discussed in the Supreme Court's opinion and whether plaintiff is an adequate representative of the class.

Chief Justice Coleman, in an addendum, replied to points made in Justice Levin's dissent:

1) The official committee notes to the 1966 revision of the Federal Rules of Civil Procedure and the comments of the principal drafter of the old rule, Professor Moore, indicate that permitting intervention after a judgment on the merits *is the* exception, not the rule.

2) The statement in the majority opinion that if the members of the group can be identified at the time of judgment, the group is identifiable, referred to the situation of the changing class, especially those changes caused by death.

Justice Levin concurred in part but disagreed with the announcement of the doctrine of convenient administration of justice, the suggestion that on remand the trial court may wish to consider requiring the plaintiff to post security, the authorization to the trial court to require that notices be sent and to

set a time within which class members must opt in, and the requirement that the trial court then rule whether permitting the case to proceed on a representative basis will promote the convenient administration of justice.

1. The Court, without discussing whether there is justification for requiring the sending of notices and that class members opt in *before* a determination of liability, decides that such an order may be entered and all but directs that it be done. This case is governed by language in the General Court Rules taken from the old Federal rule and a proposed amendment to it. Under that rule, as it was generally construed and applied in practice, the case was determined on the merits before absent class members were notified of their opportunity to opt in. The new Federal rule requires that notice be sent to each class member and provides that unless he opts out by a specified date, the judgment will be binding on him.

2. The Court adopts restrictive features based on both the new and old Federal rules. It incorporates the new rule's requirement of notice before a determination of liability (but not its opt-out provision) and authorizes the judge to bar absent class members from opting in after there has been a determination of liability. This, in effect, precludes the maintenance of class actions where small claimants are involved by establishing an additional obstacle to the maintenance of a class action. The claimant, however small the amount of his claim, must take affirmative action to be included in the case before it is decided whether it will be maintained as a class action.

3. The concept of the convenient administration of justice has been adopted under the court rules as an alternative basis for joinder of actions if there is not a common question of law or fact, not as a condition precedent to permissive joinder. The phrase "convenient administration of justice" does not appear in the class action rule. The Court has failed to demonstrate that the correct construction of the court rules authorizes dismissal of a class action on the ground that its maintenance would not serve the convenient administration of justice or that it is not manageable. That authority to dismiss should be exercised based on a finding of inadequate representation rather than on general considerations of convenient judicial administration.

4. The appropriateness of requiring security was not raised at the trial level and should not be injected by the Court on appeal.

5. If the Court wishes to adopt the concepts in the revised Federal rule to govern the future conduct of this litigation it

should do so in an orderly way, after study of the competing considerations, appropriate notice to the bench and bar, promulgation of a revised rule, opportunity for comment, and consideration of alternatives. Until the rule is revised this case should be decided in accordance with the concepts heretofore developed. In all events, class members should not be required to opt in unless that is deferred until the conclusion of the liability phase of the litigation.

6. This litigation and other cases illustrate the inadequacy of the present class action rule. The Uniform Class Actions Act/ Rule incorporates a number of the features of the new Federal rule but avoids making them preclusive, and appears to be a more balanced approach from both plaintiffs' and defendants' points of view to the problems which confront state courts in class actions than either the old or the new Federal rules. The Uniform Class Actions Rule should be published as a proposed court rule for comment by bench and bar with a view to adoption of a revised class action rule.

72 Mich App 358; 249 NW2d 701 (1976) reversed and remanded.

### Opinion of the Court

1. Parties — Class Action — Identifiable Group.

The group of persons whom a plaintiff seeks to represent in a class action must be identifiable at the time of judgment; the fact that the membership of the class may change during the litigation does not render the group unidentifiable (GCR 1963, 208.1).

2. Parties — Class Action — Identifiable Group — Usury.

A complaint for double damages for usurious interest charges which seeks to represent all customers of a bank who had incurred interest charges by their use of the bank's credit cards within the two years before the filing of the action sufficiently identifies the class to be represented where the bank possesses account records for each of its credit card customers which identify the members of the group, except perhaps 10 percent for which names and last known addresses are not available for miscellaneous reasons (GCR 1963, 208.1).

3. Parties — Class Action — Sufficient Number.

The number of customers, out of 750,000 bank credit card customers, who incurred certain interest charges during a two-year period and who might ultimately be included in a class action for double damages for usurious interest charges (exclud-

ing corporate and business cardholders, and persons whose accounts were purchased by the bank from retail stores, for example) could be sufficiently large to satisfy the requirement that the number of persons represented in a class action must be so large that it would be unpracticable to bring them all before the court (GCR 1963, 208.1).

4. PARTIES — CLASS ACTION.

A person seeking to represent a class in a class action must be a member thereof (GCR 1963, 208.1).

5. JUDGMENT — SPURIOUS CLASS ACTION — EFFECT — PARTIES — JOINDER.

The judgment in a spurious class action, in which the only connection between the members of the class is a common question of law or fact, binds only those similarly situated persons who affirmatively indicate to the court their desire to be included in the class; the action is a form of permissive joinder of the parties (GCR 1963, 208.1[3]).

6. NOTICE — PARTIES — CLASS ACTION — DUE PROCESS.

Due process requires when a judgment will bind a given person (when those not "opting out" of a Federal class action are included in the judgment) the best notice practicable under the circumstances, including personal service by mail if the person's name and address are known or easily ascertainable; however, this does not require that notice must also be sent to persons not affected by the judgment (US Const, Am XIV; FR Civ P 23).

7. NOTICE — SPURIOUS CLASS ACTION.

Notice is not mandatory in spurious class actions as a prerequisite to maintaining the action (GCR 1963, 208.1[3]).

8. NOTICE — CLASS ACTION — COSTS.

Costs of any notice of a class action which the trial court orders must be borne by the plaintiff (GCR 1963, 208.4).

9. PARTIES — CLASS ACTION — ADEQUATE REPRESENTATION.

The relationship between a class representative and an attorney handling the class action can be the basis for a finding that the requirement of adequate representation has not been met if that relationship would impair the representation of the absent class members (GCR 1963, 208.1).

10. PARTIES — CLASS ACTION — ADEQUATE REPRESENTATION.

A searching examination of the relationship between a plaintiff

bringing a class action and her attorneys is justified where the plaintiff once worked as a legal secretary for the law firm, the plaintiff knew that the attorneys were representing other plaintiffs in similar class actions when she approached them about her case, and the attorneys filed a similar class action at the same time as the plaintiff's case; the trial court may, if this attorney-client relationship impairs the representation of absent class members, dismiss the class action or require the plaintiff to post security to protect the interests of the class represented (GCR 1963, 208).

11. PARTIES — CLASS ACTION — COMMON QUESTIONS.

There is no requirement in the court rules that all questions necessary for the ultimate resolution of a class action be common to the members of the class; however, such matters as diversity of defenses, counterclaims, etc. may bear upon the determination whether a class action would promote the convenient administration of justice (GCR 1963, 208.1).

12. PARTIES — CLASS ACTION — CONVENIENT ADMINISTRATION OF JUSTICE.

A class action must promote the convenient administration of justice in addition to complying with the court rules to proceed on a representative basis (GCR 1963, 208).

13. PARTIES — CLASS ACTION — CONVENIENT ADMINISTRATION OF JUSTICE — EQUITY.

A court must take into account the practical problems that will arise in a class action if the case is allowed to proceed on a representative basis.

14. USURY — CORPORATIONS — DOUBLE DAMAGES.

Corporations and other business entities that acquired bank credit cards for their employees would not be entitled to recover double damages for usurious interest charged for the use of those cards (12 USC 86; MCL 450.1275; MSA 21.200[275]).

15. PARTIES — CLASS ACTION — ATTORNEY FEES.

Abuse of the class action device may be prevented without precluding all of the class members, some of whom may legitimately wish to sue, from proceeding on a representative basis; depending upon the number of legitimate class members who wish to affirmatively join the class action, the court may dismiss the class portion of the suit, and the court is not bound by any fee agreement entered into between the representative

plaintiff and his attorneys, except his personal contingent fee contract.

16. PARTIES — CLASS ACTION — ATTORNEY FEES.

The reasonableness of an award of attorney fees to the plaintiffs in a class action depends primarily upon the amount of time the attorney spent on the case and upon the nature and extent of the benefit conferred upon the intervening class members; the fee is payable from the proceeds of the judgment before computation for distribution to the class.

DISSENTING OPINION BY LEVIN, J.

17. PARTIES — CLASS ACTION — NOTICE.

*Notice to class members of a time within which they must, if at all, "opt in" the class action should not be required before a case may proceed to a determination of liability as a class action (GCR 1963, 208.1).*

18. PARTIES — CLASS ACTION — CONVENIENT ADMINISTRATION OF JUSTICE.

*A trial court should not be required, after the time for "opting in" of class members to a class action has expired, to rule whether permitting the case to proceed as a class action will promote the convenient administration of justice (GCR 1963, 208.1).*

19. PARTIES — CLASS ACTION.

*Absent class members, under the proper construction of the court rules, may not be put to an election whether to "opt into" a class action until after a determination of liability; that construction of the rule does not discourage small claimants from taking advantage of a favorable judgment because they could take advantage of such a judgment although they did not intervene or participate until after the judgment had been rendered (GCR 1963, 208.1).*

20. APPEAL AND ERROR — PARTIES — CLASS ACTION — BOND.

*The propriety of requiring a plaintiff in a class action to post security to protect the interests of the class should not be injected by the Supreme Court on its own initiative where it is not an issue on appeal.*

21. PARTIES — CLASS ACTION — COURT RULES.

*Incorporation into the jurisprudence of this state of concepts reflected in the revised Federal Rule of Civil Procedure concerning class actions, if it is to be done at all, should be done in*

*an orderly way after study of the competing considerations and alternatives, promulgation of a revised court rule, appropriate notice to bench and bar, and opportunity for comment and consideration of comments (FR Civ P 23; GCR 1963, 208.1).*

*George Kratchman* and *Ronald J. Prebenda* for plaintiff.

*Fraser, Trebilcock, Davis & Foster* (by *Everett R. Trebilcock* and *Michael E. Cavanaugh)* for defendant.

Cᴏʟᴇᴍᴀɴ, C.J. On June 3, 1971 Sarah Grigg commenced this action in circuit court on behalf of herself and other Michigan BankAmericard holders who had incurred finance charges on accounts between June 3, 1969 and the date of filing. The substantive merits of plaintiff's complaint have not been decided, so are not at issue. The sole question is whether the requirements of initiating a class action under Michigan statutes and court rules have been met. There is little Michigan precedential guidance as to such requirements, so it is understandable that attorneys and courts have presented a confusing combination of Federal and state law for analysis.

## I. Cᴀsᴇ Hɪsᴛᴏʀʏ

The plaintiff alleged that the defendant, a national bank doing business in Michigan, had levied finance charges higher ·than permitted by Michigan law. She alleged this violated 12 USC 85,[1] which generally prohibits a national bank from charging interest rates higher than the rates per-

---

[1] "Any association may take, receive, reserve, and charge on loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, * * * ."

mitted by the laws of the state in which the bank is located. She asked the circuit court to enjoin the defendant permanently from charging such rates and to award her and the other affected Bank-Americard holders the monetary damages authorized by 12 USC 86.[2] She also asked for an award of costs and reasonable attorney fees.

After the defendant filed an answer denying the allegations in the plaintiff's complaint, the plaintiff moved for summary judgment on the merits and for an order requiring the defendant to notify other potentially aggrieved BankAmericard holders of the pendency of the action. The defendant responded with a cross motion for summary judgment on the merits and a brief in opposition to the plaintiff's motion to require notice. In this brief, the defendant argued that it should not have to issue notice unless it had first been found liable on the merits. The defendant also filed a motion for summary judgment claiming that as a matter of law, 12 USC 85, 86 did not permit a plaintiff to sue on behalf of other individuals to recover the statutorily authorized damages.

While these motions were pending, the defendant stopped using the billing practices of which the plaintiff complained. This effectively mooted the plaintiff's request for injunctive relief.

The circuit court decided to rule only on the defendant's motion for summary judgment con-

---

[2] "The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: *Provided,* That such action is commenced within two years from the time the usurious transaction occurred."

cerning the propriety of a representative lawsuit under 12 USC 85, 86. The court ruled that these statutes did not permit a plaintiff to sue in a representative capacity.

The plaintiff appealed and the Court of Appeals reversed in an unpublished per curiam opinion. Docket No 15,891 (June 22, 1973). The defendant appealed but this Court denied leave to appeal. 390 Mich 810 (1973). The United States Supreme Court denied the defendant's application for a writ of certiorari. 419 US 840 (1974).

Upon return to circuit court, the plaintiff argued that the motions for summary judgment on the merits previously filed by the parties should be decided first. Then, if the defendant were found liable, the questions relating to the maintenance of a representative action could be decided. The defendant, on the other hand, argued that the merits should not be decided unless the court determined that the action could proceed on a representative basis.

The court chose to follow the defendant's format and after further briefing and hearings ruled that the action would not be allowed to proceed on a representative basis because:

"1. There's no common question of fact as to each member of the class and an analysis of the case reveals there could be different questions of law involved as to each member.

"2. The rights here are severable as each member of the class's claim is different.

"3. For this Court to handle this case as a class action is totally unmanageable.

"4. It is not a superior method of litigating claims in this case. What the Court would be doing is trying thousands of small claim cases. In essence numerous mini trials within the class action itself.

"5. The plaintiff does not fairly or adequately represent the class in this case.

"6. Plaintiff in her deposition said that she wouldn't pay the cost of notices to all members of the class estimated around $86,000 to over $100,000. She contemplated said notices to be mailed by and at the cost of the defendant.

"7. To require the defendant to send notices would be a horrendous and possibly annihilating punishment and most unjust." (Opinion of the circuit court, May 30, 1975.)

The court also ruled that the plaintiff's individual claim for damages, which, it was said, only amounted to around $200, including interest from 1969, did not satisfy the amount-in-controversy requirement for circuit court jurisdiction. The court gave the plaintiff the option of having the case transferred to district court or having it dismissed altogether. The plaintiff elected not to proceed individually in district court and the case was therefore dismissed.

The plaintiff appealed but the Court of Appeals affirmed. 72 Mich App 358; 249 NW2d 701 (1976). Using a mixture of state and Federal law and procedure, the panel concluded that the plaintiff could not sue on behalf of the other potentially aggrieved BankAmericard holders because she was unwilling to pay for notice to the other holders, she was a secretary for some of the attorneys handling her case, and the case was unmanageable as a representative action and therefore not a superior method of litigating the individual claims. The panel also concluded that although the substantive merits of the case could have been decided first, the ultimate unmanageability of the case on a representative basis made it unnecessary to do so.

We remand to the trial court for further proceedings consistent with this opinion.

## II. FACTS

Although the substantive merits of the plaintiff's complaint are not involved in this appeal, some understanding of the defendant's credit card operation and the billing practices that the plaintiff claims were illegal is necessary in order to analyze the procedural question presented.

### A. *Systems of Billing*

The purchase of goods or services with a BankAmericard is a three-party transaction. The customer using the card receives the purchased items from a merchant. The merchant then sells the account receivable generated by the purchase to the defendant at a discount. The defendant then bills the cardholder for the full amount of the debt. In this case the cardholder's first contract with BankAmericard provided for a finance charge of 1.5 percent per month (18 percent annually) on the unpaid balance. The subsequent contract was for .0493 percent per day.

Because the number of cardholders is very large, it is not economically feasible to bill them all on the same day. Therefore, the defendant divides the cardholders into smaller, more manageable groups and bills each group on a different day of the month. For example, group one might be billed on the first day of every month, group two on the second, etc. This day is called the billing date.

If the billing date for a particular group happens to fall on a Sunday or a holiday in a given month, the group is billed on the immediately preceding work day. The billing date for each group is the

last day of that group's billing cycle. The number of days in a group's billing cycle will vary depending on the billing date, the number of days in the month or months spanned by the billing cycle and whether the billing date falls on a Sunday or a holiday.

During the time period pertinent to this appeal, the defendant's BankAmericard holders were divided into 20 separate billing groups.

From June to October of 1969, the defendant did not impose a finance charge on purchases made with a BankAmericard if the cardholder paid for the purchases in full within 25 days of the cardholder's billing date. Thus, for example, if a cardholder purchased $200 of goods or services in June, had a billing date of July 1 and paid the defendant $200 by July 26, no finance charge would be imposed. If, however, the purchases were not paid for in full within 25 days, the defendant would impose a finance charge. The finance charge was calculated by multiplying the amount not paid by 1.5 percent. Thus, in the above example, if the cardholder only paid $40 by July 26, the August 1 bill would include: (1) the $160 in principal still owed for the June purchases, and (2) a finance charge of $2.40 (1.5% × $160). If the cardholder had purchased another $100 of goods or services during July, this would also be included in the August 1 bill but without any finance charge. If the cardholder paid the total amount of the August 1 bill by August 26, no further finance charge would be imposed. If the full amount was not paid, another finance charge would be imposed on the amount remaining unpaid.

It was possible that the amount remaining unpaid upon which a finance charge would be imposed could include all or part of the previous

month's finance charge. However, because the defendant applied partial payments first to unpaid finance charges and then to principal, a cardholder would not have a finance charge imposed on the previous month's finance charge unless the amount paid by the cardholder on the current bill was less than the amount owed for previous finance charges. In the example above, the cardholder would not have a finance charge imposed on the previous finance charge unless the cardholder paid less than $2.40 on the August 1 bill.

In October of 1969 the defendant modified its method of computing finance charges. If a bill was not paid in full within 25 days of the billing date, the defendant would compute the finance charge by multiplying the sum of the actual daily balances in the cardholder's account during the billing cycle by .0493 percent.

In a 28-day billing cycle, a .0493 percent daily rate amounted to a cyclical rate of 1.3804 percent (.0493% × 28). In a 29-day billing cycle, it amounted to a 1.4297 percent cyclical rate. In a 30-day billing cycle, it amounted to a 1.4790 percent cyclical rate. In a 31-day billing cycle, it amounted to a 1.5283 percent cyclical rate. On a yearly basis, it amounted to a rate of 17.9945 percent.

## B. Complaint

The plaintiff's complaint contained three distinct theories of recovery. The first theory was based on the fact that prior to August 20, 1969 (the effective date of the Banking Code of 1969, specifically, MCL 487.491; MSA 23.710[191]),[3] no Michigan stat-

---

[3] "Banks may collect interest and charges on loans as follows:

"(a) On any loan made pursuant to an existing credit card arrangement or other agreement existing prior to such loan whereby the

ute specifically established a 1.5 percent finance charge rate on credit card accounts. In this vacuum, the bank relied upon the Retail Installment Sales Act, MCL 445.862(c); MSA 19.416(112)(c)[4] (not in excess of 1.7 percent per month), studied the rate charged in surrounding states, and set the finance charge on unpaid balances at 1.5 percent. It was the same rate charged by similar institutions around the country and in Michigan. The plaintiff, however, contended that during this period the defendant's credit card operation should have been governed by MCL 438.31; MSA 19.15(1),[5] the general Michigan law on ordinary interest rates, which set a ceiling of 5 percent per year or 7 percent per year if the loan agreement was in writing. Therefore, the plaintiff claimed that the parties' contract for a 1.5 percent per month

---

bank honors the borrower's draft, pays or agrees to pay the borrower's obligations, purchases the borrower's obligation, or advances money to or for the account of the borrower, and in which the loan finance charges are not precomputed but are computed from time to time on the basis of the unpaid balances, interest, and charges in a combined amount of not to exceed 1.5% of the unpaid balance per month."

[4] "A retail charge agreement may provide for, and the seller or holder may then, notwithstanding the provisions of any other law, charge, collect and receive, a time price differential for the privilege of paying in installments thereunder, in an amount not exceeding 1.7% of the unpaid balance per month. The time price differential under this subsection shall be computed on all amounts unpaid thereunder from month to month, which need not be calendar months, or other regular periods; * * * ."

[5] "The interest of money shall be at the rate of $5.00 upon $100.00 for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum. This act shall not apply to the rate of interest on any note, bond or other evidence of indebtedness issued by any corporation, association or person, the issue and rate of interest of which have been expressly authorized by the public service commission or the securities bureau of the department of commerce, or is regulated by any other law of this state, or of the United States, *nor shall it apply to any time price differential which may be charged upon sales of goods or services on credit.*" (Emphasis added.)

finance charge on the outstanding balance (18 percent per year) from June 3, 1969 to August 20, 1969 violated Michigan law.

The plaintiff's second theory of recovery was based on the defendant's use of the .0493 percent daily rate to compute finance charges after October of 1969. The plaintiff claimed that the cyclical rate of 1.5283 percent during those months when there was a 31-day billing cycle violated MCL 487.491; MSA 23.710(191), which limits the finance charge on credit card accounts to "1.5% of the unpaid balance per month", even though the total annual charge was less than the permissible 18 percent and the rate in 28-, 29- or 30-day billing cycles was less than the permissible 1.5 percent.

The plaintiff's third theory of recovery was based on the defendant's practice of adding unpaid finance charges into the principal amount due and thereafter imposing a finance charge on the whole sum (although crediting payments first to any outstanding finance charge).

## III. GCR 1963, 208

Whether the plaintiff can sue the defendant in a Michigan circuit court on behalf of herself and the other potentially aggrieved BankAmericard holders is a procedural question of state law governed by GCR 1963, 208. In analyzing this procedure, it is important to note that GCR 208 is different from its counterpart in the Federal courts, Federal Rule of Civil Procedure 23.[6] Although there are some similarities between GCR 208 and the present Federal rule, the differences are substantial. Care should be taken not to confuse them. See

---

[6] GCR 1963, 208 is patterned after the original version of FR Civ P 23 promulgated in 1938 and has not been amended to reflect the sweeping changes made in the Federal rule in 1966.

generally, 7 Wright & Miller, Federal Practice and Procedure: Civil, §§ 1752-1753, and 1 Newberg, On Class Actions, §§ 1004-1008, 1216.

The plaintiff contends that GCR 1963, 208.1(3) permits her to sue the defendant on behalf of the other BankAmericard holders. It provides:

"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may on behalf of all sue or be sued when the character of the right sought to be enforced for or against the class is

* * *

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

This section of the rule sets forth seven separate requirements which must be satisfied in order for an action to proceed on a representative basis. In essence, the requirements are:

1. There must be an identifiable class;

2. The number of persons in the class must be so large that it would be impracticable to bring them all before the court;

3. The person or persons seeking to represent the class must be members thereof;

4. The interests of the class must be adequately represented;

5. The right or rights sought to be enforced must be several;

6. There must be a common question of law or fact affecting the several rights, and

7. A common relief must be sought.

See generally 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Ch 20, pp 601-602.

## A. Identifiable Class

The first clause of GCR 1963, 208.1(3) gives rise to the requirement that the group of persons whom the plaintiff seeks to represent must be identifiable. If the membership of the group is so amorphous that it cannot be definitely ascertained, then there is no "class" and the case cannot proceed on a representative basis.

It is not necessary that each member of the group be named in the complaint. It is sufficient if the members can ultimately be identified. As stated by Honigman & Hawkins, *supra,* p 602:

"The members of the class need not be specifically named, but they must be described adequately according to their common interests, in order to show that there really are other persons similarly situated and to permit identification of qualifying members of the class when the judgment is invoked for or against them."

The fact that the membership of the group may change during the course of the litigation does not render the group unidentifiable.[7] If the members of the group can be identified at the time of judgment, the requirement that the group be identifiable is satisfied.

Whether a sufficiently identifiable group exists is a question of fact which must be decided on a case by case basis.

In the case at bar the plaintiff's complaint described the group that she seeks to represent as "all other customers of Michigan National Bank who have incurred interest charges pursuant to their use of [the bank's] credit cards * * * within

---

[7] See *American State Savings Bank, Trustee, v American State Savings Bank,* 288 Mich 78, 85-86; 284 NW 652 (1939), and *Detroit v Detroit United Railway,* 226 Mich 354, 369-370; 197 NW 697 (1924).

the two years prior to the institution of this lawsuit".

This group is sufficiently identifiable, although with great difficulty as to individuals. The defendant possesses account records for each of its credit card customers, if only in microfilm form. These records are said to contain the information necessary to identify the members of the group, excepting perhaps 10% on which names and last known addresses are not available for miscellaneous reasons.

## B. Number of Persons

In excess of 750,000 persons were holders of the defendant's credit cards at one time or another during the time period framed by the plaintiff's complaint. These persons are potential members of the group that the plaintiff seeks to represent. The defendant has estimated that approximately one-third of these persons never incurred finance charges in connection with their use of the defendant's credit cards because they always paid their bills in full within the allowable 25 days of their billing date. If this estimate is correct, approximately 500,000 cardholders did incur some finance charges. Although it is not clear at this point in the litigation (for reasons that will be delineated below) precisely how many of these 500,000 cardholders might ultimately be included in the class, the number could be sufficiently large to satisfy this requirement. Whether a class action would promote the convenient administration of justice remains to be ascertained.

## C. Membership in Class

The rule states that "such of them [referring to

the 'persons constituting a class'], one or more, * * * may * * * sue" on behalf of all. This language requires that a person seeking to represent the class must be a member thereof.[8]

The plaintiff became a holder of one of the defendant's credit cards in 1967 and continued to be a holder through June of 1971 when this action was commenced. Allegedly she incurred finance charges pursuant to each of the billing practices claimed to be illegal and so is a member of the class.

## D. Adequate Representation

The requirement that the class must be adequately represented is an attempt to insure that the rights of the absent class members will be protected.[9] The court's role in assessing the adequacy of the representation will vary from case to case depending upon the extent to which the rights of the absent class members will be affected if the case is allowed to proceed on a representative basis. If, for example, the final judgment would bind all members of the class or bind all members who do not affirmatively indicate that they wish to be excluded from the class (commonly referred to as "opting out"), then the court would have to focus discrete attention upon the adequacy of notice and of representation. If, on the other hand, the judgment will bind only those members of the class who decide and affirmatively indicate that they wish to be included in the class and to be represented by the class representative and the chosen attorneys (commonly referred to as "opting

[8] See *Dipboye v Acchione,* 351 Mich 550, 554; 88 NW2d 611 (1958).

[9] See *Dipboye v Acchione, supra; American State Savings Bank, Trustee, v American State Savings Bank, supra; Detroit v Detroit United Railway, supra;* and GCR 1963, 208.4.

in"), then there is less reason for such finely drawn surrogate protection by the court as Federal cases mandate. Those not affirmatively "opting in" are not bound by any judgment.

Michigan's first court rule governing representative actions, Court Rule No 16 (1945) was adopted in 1945.[10] Previously, a judgment in the limited types of representative actions permitted by Michigan case law (common rights were required) was binding on all members of the class.[11]

Rule 16 broadened the range of cases in which Michigan courts could entertain class actions.[12] However, neither Rule 16 nor the original version of FR Civ P 23 spelled out what the binding effect of a judgment would be in a representative action in which the rights involved were not common but several and distinct in nature, the only connection between the class members being a common question of law or fact. The drafters of the Federal rule believed that the binding effect of judgments was a

[10] Court Rule No 16 (1945), like GCR 1963, 208, was patterned after the original version of FR Civ P 23.

[11] See, for example, *International Typographical Union v Macomb County,* 306 Mich 562; 11 NW2d 242 (1943). The common nature of the rights involved in such cases virtually guaranteed adequate representation and justified a broad binding effect. As the Court in the case above said in the course of holding that a previous class suit bound all members of the class:

"We quote from what we said in our opinion in *American State Savings Bank, Trustee, v American State Savings Bank,* 288 Mich 78, because we feel that what we said is applicable here:

" 'There was no issue that could be raised by petitioner in such circumstances that would not affect all other depositors or holders of certificates in the same way. One certificate holder could not have greater rights as to his claim than another, and what would have been a defense or answer to the bill for one would have been the same for another. Their rights and defenses were identical. Petitioner was a member of the class represented by the named defendants.' " *Id.,* 576.

See, also, *Saginaw v Consumers Power Co,* 304 Mich 491; 8 NW2d 149 (1943).

[12] See *Dipboye v Acchione, supra,* 554 and Honigman & Hawkins, *supra,* 605.

matter of substantive law beyond the scope of their undertaking and therefore did not include this subject in the body of their rule. See 3B Moore's Federal Practice, Appendix to Chapter 23, ¶ 23.11[1], p 23-2801.

Although the rules themselves were silent on the subject of binding effect, it was clear to the principal drafter of the Federal rule, Professor James Moore, that the judgment in a several rights/common question class action only bound those members of the class who chose to opt in.[13] As such, the common question "class action" was not really a class action at all, in the traditional sense. It was instead a liberal permissive joinder device—an invitation to other similarly situated individuals to join an action and be represented by the class representative.[14] Although many commentators and a few courts challenged this interpretation, it soon became the general rule.[15] This anomaly—a so-called class action that did not necessarily bind all members of the class—came to be known as a "spurious" class action.

Honigman & Hawkins, *supra,* 605-606, says this about the binding effect of the judgment in a spurious class action:

"The standard formulation is that * * * the judgment in a 'spurious' class action (sub-rule 208.1[3]) is binding only upon the persons actually named and served as

[13] See 3B Moore's Federal Practice, ¶ 23.11[3], pp 23-2851, *et seq.* See, also, Moore, *Federal Rules of Civil Procedure: Some Problems Raised by the Preliminary Draft,* 25 Georgetown L J 551, 571 (1937).

[14] See 3B Moore's Federal Practice, *supra,* ¶ 23.10[3], pp 23-2601, *et seq.*

[15] See 7 Wright & Miller, *supra,* § 1752, p 525, 7A Wright & Miller, § 1789; Advisory Committee Notes to Amended FR Civ P 23, reported at 39 FRD 69, 98, 99 (1966); 1 Newberg, *supra,* § 1216, pp 316-318; Homburger, *State Class Actions and the Federal Rule,* 71 Columbia L Rev 609, 627-628 (1971).

parties. Barron & Holtzoff, Federal Practice and Procedure, § 572.

"According to this formulation, * * * a spurious class action is nothing more than a permissive joinder device or 'an action inviting joinder'. *Ibid.* Blume, American Civil Procedure, 1955, pp 357-358. Many commentators have urged that it should make no difference which type of class action is involved, so long as the requirements of the rule are met and adequate representation has been assured. According to this view, the judgment in all class actions would be binding, in personam, upon all the members of the class. Barron & Holtzoff, Federal Practice and Procedure, § 572. It is doubtful that this view could prevail as to * * * spurious class actions unless the members of the class had at least received notice of the action, if not formal service of process. * * *

"Implicit support may be found for this conclusion in sub-rule 208.5, which provides that a true class action can be dismissed or compromised only after notice has been given to all members of the class, whereas such notice is optional as a condition precedent to dismissal or compromise of a * * * spurious class action. The apparent reason for this distinction is an assumption that the disposition of the true class action would be binding upon the absentee members of the class, so that they are entitled to notice, whereas the final disposition in a * * * spurious class action will not be binding, in personam, so that notice is discretionary."

In *Paley v Coca Cola Co,* 389 Mich 583; 209 NW2d 232 (1973), the opinion written by Justice SWAINSON and joined by Justice BRENNAN and this writer echoed the "standard formulation":

"The type of class action involved in this case, the so-called spurious action (see GCR 1963, 208.1[3]) is actually a form of permissive joinder of parties." *Id.,* 607.

The other opinion, written by Justice WILLIAMS and joined by Chief Justice T. M. KAVANAGH and

Justice T. G. KAVANAGH, did not discuss this subject, but it is clear that Justices WILLIAMS and T. G. KAVANAGH would have agreed that the spurious action is a permissive joinder device. In *Northview Construction Co v St Clair Shores,* 395 Mich 497; 236 NW2d 396 (1975), the per curiam opinion signed by those two justices and by Justice LEVIN stated:

"An action commenced under the authority of GCR 1963, 208.1(3) is commonly known as a 'spurious' class action. When the number of parties holding similar claims against a defendant is so large that it would be impracticable to bring each claim individually before the court, GCR 1963, 208.1(3) functions as a permissive joinder device. *Paley v Coca Cola Co,* 389 Mich 583, 607; 209 NW2d 232 (1973) (Opinion of Swainson, J.). It allows at least one named plaintiff to represent the class before the court and to litigate the issues common to the claims against the defendant." *Id.,* 508.

Although on rehearing, the dissent in *Northview* became the controlling opinion, 399 Mich 184; 249 NW2d 290 (1976), there was no disagreement with the conclusion that the spurious class action was "a form of permissive joinder of parties". *Paley, supra,* 607.

On the basis of the foregoing, we conclude that the judgment in a spurious class action binds only those similarly situated individuals who affirmatively indicate to the court their desire to be included in the class (to "opt in"). This insures maximum protection of the rights of the absent class members in the cases where they need it most—cases in which the rights involved are not common but several and distinct in nature and in which the only connection between the members is a common question of law or fact.

As noted in part III C, above, the plaintiff purports to be a member of the class which she seeks to represent with respect to all three of the claims contained in her complaint. The case has been pursued through the circuit court, the Court of Appeals, this Court, the United States Supreme Court, back to the circuit court, back to the Court of Appeals and finally back to this Court. In addition, when offered the opportunity of either having her individual case transferred to district court or having it dismissed altogether along with the rest of the class, she elected dismissal, thereby enabling her to challenge the circuit court's ruling that the case could not proceed on a representative basis.

The Court of Appeals recognized that there is little question as to whether this plaintiff "will vigorously pursue the rights of the class through qualified counsel".[16] As that Court stated: "Defendant does not challenge the adequacy of plaintiff's counsel nor the plaintiff's spirit".[17] Nevertheless, the Court of Appeals ruled that the plaintiff had not satisfied the requirement of adequate representation because: (1) she was not willing to pay the cost of sending personal first-class mail notice to each of the other BankAmericard holders, and (2) because she was employed as a secretary for some of the attorneys handling her case. (The attorneys also represented her husband in a similar class action regarding finance charges on delinquent revolving accounts with Robinson Furniture Company and represented her brother-in-law in two other credit card actions. The attorneys filed a total of seven such suits in Wayne County around the same time.)

[16] 72 Mich App 358, 368.
[17] *Ibid.*

## 1. Notice

The Court of Appeals panel believed that the plaintiff's willingness to pay for notice was relevant to the requirement of adequate representation because they concluded that the Due Process Clause of the Federal Constitution and a recent United States Supreme Court decision interpreting the *amended* version of FR Civ P 23 required the plaintiff to issue and pay for individual first-class mail notice before the case could proceed on a representative basis. The Court of Appeals based this conclusion on three Federal cases: *Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950), *Schroeder v New York,* 371 US 208; 83 S Ct 279; 9 L Ed 2d 255 (1962) and *Eisen v Carlisle & Jacquelin,* 417 US 156; 94 S Ct 2140; 40 L Ed 2d 732 (1974).

In *Mullane,* a state court decree entered pursuant to a state accounting statute terminated all the rights of certain beneficiaries against the trustee of a trust fund. The United States Supreme Court indicated its understanding of the binding effect of the decree as follows:

"The effect of this decree, as held below, is to settle 'all questions respecting the management of the common fund.' We understand that every right which beneficiaries would otherwise have against the trust company, either as trustee of the common fund or as trustee of any individual trust, for improper management of the common trust fund during the period covered by the accounting is sealed and wholly terminated by the decree." *Id.,* 311.

On these facts, the Court held that notice by publication to the beneficiaries was insufficient to satisfy the requirements of the Due Process Clause. The Court said:

"An elementary and fundamental requirement of due process *in any proceeding which is to be accorded finality* is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

\* \* \*

"Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and postoffice addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." (Emphasis added.) *Id.,* 314-318.

In *Schroeder,* an individual plaintiff had been deprived of certain water rights by the defendant pursuant to administrative proceedings without having been personally notified by mail of the pendency of the proceedings. The United States Supreme Court again held that notice by publication was insufficient:

"The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable *and whose legally protected interests are directly affected by the proceedings in question."* (Emphasis added.) *Schroeder, supra,* 212-213.

The Court did not discuss class actions at all.

In *Eisen,* the plaintiff attempted to maintain a class action pursuant to the *amended* version of FR Civ P 23. The amended version differs substantially from its predecessor (and GCR 208) in that it specifically states that the judgment in *all* types of class actions is binding on *all* members of the class who do not request *exclusion* and that notice

*"shall"* be given to all class members.[18] This was one of the most important changes made in the Federal rule. The majority in *Eisen* said this about notice:

"Rule 23(c)(2) provides that, in any class action maintained under subdivision (b)(3), *each class member shall be advised that he has the right to exclude himself from the action on request or to enter an appearance through counsel, and further that the judgment, whether favorable or not, will bind all class members not requesting exclusion. To this end, the court is required to direct to class members 'the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'* We think the import of this language is unmistakable. Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort.

\* \* \*

*"As the Advisory Committee's Note explained, the Rule was intended to insure that the judgment, whether favorable or not, would bind all class members who did not request exclusion from the suit. 28 USC*

---

[18] See the amended version of FR Civ P 23, §§ c(2) and c(3), which states:

"(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

"(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class."

Also see the Advisory Committee Notes to Amended FR Civ P 23 reported at 39 FRD 69, 98-99 (1966).

*App, pp 7765-7768. Accordingly, each class member who
can be identified through reasonable effort must be
notified that he may request exclusion from the action
and thereby preserve his opportunity to press his claim
separately or that he may remain in the class and
perhaps participate in the management of the action."*
(Footnotes omitted. Emphasis added.) *Eisen, supra,* 173-
176.

These three cases stand for the proposition that
*when a judgment will bind a given individual*
(when those not opting out are included in the
judgment), the best notice practicable under the
circumstances is required, including personal ser-
vice by mail if the individual's name and address
are known or are easily ascertainable. They can-
not fairly be read to hold that the Due Process
Clause of the Federal Constitution or the *original*
version of FR Civ P 23 and analogous state rules
require that notice must also be sent to persons
not affected by the judgment. All three cases in-
volved binding judgments and none of them in-
volved an application of the original version of FR
Civ P 23 upon which GCR 208 is patterned.

*Mullane, Schroeder* and *Eisen* are, therefore,
inapposite and not precedent for Michigan proce-
dural requirements in which only those opting in
are bound by the court's judgment.

The words used in GCR 208 clearly indicate that
in Michigan notice is not mandatory in spurious
class actions. GCR 208.4 states:

"The court * * * *may* order that notice be given, in
such manner as it *may* direct * * * ." (Emphasis
added.)

GCR 208.5 states:

"A class action shall not be dismissed or compromised

without the approval of the court. If the right sought to be enforced is one defined in sub-rule 208.1(1) [true class action], notice of the proposed dismissal or compromise *shall* be given to all members of the class in such manner as the court directs. If the right is one defined in paragraph * * * (3) of sub-rule 208.1 [spurious class action], notice shall be given *only if the court requires it."* (Emphasis added.)

This language stands in sharp contrast to the amended version of FR Civ P 23, which states:

"[T]he court *shall* direct to the members of the class the best notice practicable under the circumstances * * * ". (Emphasis added.)

On the basis of the foregoing, the Court of Appeals incorrectly concluded that notice to the absent class members in accordance with *Eisen, supra,* is required as a prerequisite to the maintenance of a spurious class action in Michigan. There has been no specific judicial determination of a "manner" of notice in this case, although the trial court seems to have believed itself bound by the Federal court rule and resultant Federal case law.

The court was correct, however, in determining that costs of any notice must be borne by the plaintiff.

## 2. Propriety of Class Representative

The Court of Appeals panel also ruled that the plaintiff was not an adequate representative of the class because her status as a secretary for some of the attorneys handling her case gave rise to an "appearance of solicitation and conflict of interest". 72 Mich App 358, 373. Neither the circuit court nor the Court of Appeals specifically found

that there had been any solicitation or that any actual conflict of interest existed.

The Court of Appeals was correct in assuming that the relationship between a class representative and the attorney or attorneys handling the case can be a relevant consideration in assessing the requirement of adequate representation. If that relationship would impair the representation of the absent class members, it can be the basis for a ruling that the requirement of adequate representation has not been met.

The plaintiff began working as a legal secretary in 1956 for the law firm handling her present case. She is now retired. During her deposition she was repeatedly asked whether she or her attorneys initiated the idea of suing the defendant individually or on a representative basis, and repeatedly she answered that it was she who approached her attorneys and not vice versa. She also stated in response to the defendant's questions that she had never been offered any bonus, percentage of recovery or any other monetary consideration for bringing this lawsuit.

The Court of Appeals panel placed reliance on the fact that the attorneys handling the plaintiff's case were also handling other class actions involving other plaintiffs and defendants in which credit card operations were being challenged and the plaintiff was aware of this fact before she approached her attorneys.[19] The panel seemed particularly concerned with the fact that a case very similar to the plaintiff's case was filed by her attorneys at the same time her case was filed. The panel said:

"We agree with counsel for the defendant that it is

---

[19] 72 Mich App 358, 371-372.

highly unusual that two separate banks were violating the interest laws in the same manner and that both plaintiffs would take their complaint to the same lawyer." *Id.,* 372.

These facts would justify a searching examination of the relationship between the plaintiff and her attorneys and if such examination revealed that this relationship would interfere with her representation of the class, the class portion of the suit could be dismissed. In addition to the option of dismissal, on remand the trial court may wish to consider GCR 208.4, which states, *inter alia:*

"The court at any stage of an action under sub-rules 208.1 or 208.2 may *require such security and impose such terms as shall fairly and adequately protect the interests of the class or association in whose behalf the action is brought* * * * ". (Emphasis added.)

The Committee Notes to this section indicate that it was designed to empower trial judges to deal with "suspicious" or "vexatious" class actions. See Honigman & Hawkins, *supra,* 601.

## E. Nature of Rights

The requirement that the right or rights sought to be enforced must be several in nature has not been contested in this case. Each of the potential members of the class may have a separate and distinct cause of action against the defendant. There is no common fund or obligation involved.[20]

---

[20] Compare *International Typographical Union v Macomb County, supra; American State Savings Bank, Trustee, v American State Savings Bank, supra;* and *Detroit v Detroit United R Co, supra.*

*F. Common Questions*

In order for a case to proceed on a representative basis under GCR 208.1(3), there must be "a common question of law or fact affecting the several rights" of the class members. The plaintiff contends that the following questions of law are common to the class, there being no common question of fact alleged:

1. Whether it was lawful for the defendant to charge interest on its credit card accounts at the rate of 1.5 percent per month prior to the effective date of MCL 487.491; MSA 23.710(191);

2. Whether Michigan law permitted the defendant to charge a daily rate of interest that resulted in a cyclical rate of 1.5283 percent in the 31-day billing cycles, under 1.5 percent in other cycles and less than the 18 percent permitted annually;

3. Whether Michigan law permitted the defendant to add unpaid finance charges into the principal amount due and thereafter impose a finance charge on the whole sum, although applying any payment first to the unpaid finance charges.

These questions are common to the members of the class defined by the plaintiff's complaint. The answers to them will affect the members' individual (several) rights of recovery in the same manner—either the members will be entitled to seek recovery subject to any defenses defendant might have, or they will not be—and they can all be answered without reference to the member's individual account records or to any other individual differences between the class members. See, generally, 3B Moore's Federal Practice, ¶ 23.10[5], pp 23-2701 *et seq.* and 7 Wright & Miller, *supra,* § 1763.

Although the answers to these questions alone will not be sufficient to settle the entire contro-

versy, there is no requirement in the rule that all questions necessary for ultimate resolution be common to the members of the class—there need only be "a common question of law or fact" to satisfy this portion of the rule. However, such matters as diversity of defenses, counterclaims, etc. may bear upon determination of whether this class action would promote the convenient administration of justice.

### G. Common Relief

The plaintiff has requested the same relief for herself and for all of the other members of the class—the statutory damages prescribed by 12 USC 85, 86. Although each account may be based upon different cycles, dates of entry, sums to be computed, etc., double the finance charges imposed is the relief sought for all qualifying class members during the two-year period in question.[21]

### IV. CONVENIENT ADMINISTRATION OF JUSTICE

This Court has recognized that there is one further requirement that must be met in order for a case to proceed on a representative basis. Most often this requirement has been referred to under the rubric of "the convenient administration of justice". Essentially the requirement is an outgrowth of the equitable heritage of class actions and the realization that there are practical limitations on the judiciary's capability to resolve disputes.

### A. Michigan Cases

The "convenient administration of justice" re-

---

[21] See, generally, 3B Moore's Federal Practice, *supra,* ¶ 23.10[6], pp 23-2721, *et seq.,* and 7 Wright & Miller, *supra,* § 1752, pp 536-537.

quirement was first applied by the Court in *Young v Thendara, Inc,* 328 Mich 42; 43 NW2d 58 (1950). The plaintiffs were attempting to sue the defendant on behalf of themselves and all other lot owners in a subdivision. The purpose of the suit was to establish the lot owners' rights to use certain easements. The merits of each lot owner's right to use the easements depended upon the terms of the lot owner's deed and his or her source of title. This Court said:

"The diversity of sources from which titles to lots have been acquired by all other possible lot owners, the doubt as to the title of their grantors at the time their respective rights accrued, shows the impracticability of considering all owners of lots in the subdivision as a class for the purpose of decreeing their individual rights, in the case at bar." *Id.,* 48.

In *Bajorek v Kurtz,* 335 Mich 58; 55 NW2d 727 (1952), the plaintiffs were residential home owners in a certain section of Detroit. The defendant was a manufacturer of cement and related concrete products. The plaintiffs wanted to sue the defendant in one action and recover individual damages caused to their respective homes by the defendant's operations. They argued that MCL 608.1; MSA 27.591 permitted them all to join in a single action. That statute permitted joinder when "sufficient grounds * * * appear for uniting the causes of action in order to promote the convenient administration of justice". This Court ruled that the plaintiffs could not join together in one action:

"No claim is here made that the causes of action asserted by plaintiffs are joint. Rather, it is argued that to permit such joinder would 'promote the convenient administration of justice'. It will be noted that under

the specific language of the statute 'sufficient grounds' must appear in order to warrant the joinder of causes of action for the reason here urged. We think it must be said that grounds of such character are not present in the case at bar. We have a situation presented in which a number of persons assert that they have been injured severally in their property rights because of improper and unlawful acts on the part of defendants. It cannot be said with certainty that the same issues will be presented in all of the 25 cases alleged in the declaration and covered by the bill of particulars. Proofs may show damage in some cases but not in others, and defenses may exist against the rights of certain plaintiffs that are not available against other plaintiffs." *Id.,* 64.

Although *Bajorek* was based on a statute, this Court subsequently quoted from and referred to *Bajorek* in a case involving a class action under Rule 16 and ruled that in such a case "the same rule of law would apply". *Palmer Park Theater Co v Highland Park,* 362 Mich 326, 344; 106 NW2d 845 (1961).

In *Hardware Dealers Mutual Insurance Co v R H Hidey, Inc,* 349 Mich 490; 84 NW2d 795 (1957), the Court shed some light on the meaning of the phrase "convenient administration of justice":

"It must be capable of being said that the doing of justice as between the parties will be in some way favorably affected if the action in question is permitted.

* * *

"The language of the statute may not be construed as contemplating merely the expediting of the work of the court." *Id.,* 514.

The Court went on to deny joinder in part because "it does not appear that any one of these plaintiffs would have been prejudiced had it, or he, brought

a separate suit for the recovery of damages claimed". *Id.,* 514. The Court added:

"We are concerned here with causes of action resulting, as it is claimed, from the invasion of property rights of a number of parties. It may not be said that the same questions will arise in each case. The averments of the declaration indicate that the conduct of the contractor claimed to have been wrongful in character extended over a period of 4 months. We may not assume that all of the abutting properties involved were injured simultaneously by defendant's improper methods of operating. In some instances the question may arise whether the property claimed to have been damaged was actually abutting property within the meaning of the contractual obligations involved. Under the situation presented the statute does not permit joining the causes of action claimed to have arisen because of the contractor's wrongful operations in the performance of its contract." *Id.,* 515.

In *Freeman v State-Wide Carpet Distributors, Inc,* 365 Mich 313; 112 NW2d 439 (1961), several hundred plaintiffs were attempting to sue the defendants for damages and other relief based on theories of fraudulent misrepresentation. The plaintiffs contended that either MCL 608.1; MSA 27.591 or Rule 16 permitted them to join together in one action. This Court rejected both of these contentions and again denied joinder:

"There is no claim here that plaintiffs assert a joint cause of action. It is claimed that the statute permits joinder of multiple causes of action even if not joint where the 'convenient administration of justice' would thereby be promoted. A similar claim was made in the recent case of *Hardware Dealers Mutual Insurance Co v R H Hidey, Inc,* 349 Mich 490, 507, 516, in which separate causes of action asserted by a number of plaintiffs were included in 1 suit. A majority of this Court held that the convenient administration of justice

would not be served by permitting joinder in the circumstances disclosed by that record. Both opinions for affirmance relied upon the fact that different questions of law and fact would be involved in the various claims or in defense thereto. Significantly, the dissenting opinion similarly acknowledged (p 506) that 'a complete or substantial disparity of issues of either law or fact and a complete or substantial disparity of defenses available against proposed joint plaintiffs would indeed affect the decision as to whether or not joinder promoted the convenient administration of justice'.

"In the case at bar the bill of complaint embraces separate causes of action arising out of several hundred transactions apparently occurring over a period of many months and perhaps several years. Presumably some of the misrepresentations alleged therein were made to some plaintiffs and not to others and some plaintiffs reasonably may have relied on them and others may not. It is evident that the circumstances of the execution of the purchase contracts and the promissory notes varied considerably so that some plaintiffs may have grounds for rescission not available to others. *In short, the very substantial disparity of issues of law and facts between the multiple plaintiffs' claims would render any judicial proceeding in which all were sought to by adjudicated simultaneously, incomprehensible to the litigants, their counsel and the chancellor as well.*

*"The same disparity of issues compels our ruling that this cannot be considered a class action under Court Rule No 16 (1945).*

\* \* \*

"The rule requires that, where the right sought to be enforced in a class action is not joint or common, or secondary, but there are involved instead several rights (as there are here), the object of the action must be adjudication of claims affecting specific property or there must be 'a common question of law or fact affecting the several rights and a common relief' must be sought. Plaintiffs suggest that there is a common question of law relating to defendant bank's status as a holder in due course and that a common question of fact exists because some or all of the plaintiffs relied

upon certain television advertising used by the defend-
ants and defendants otherwise followed a uniform pat-
tern of conduct in their dealings with plaintiffs. *Al-
though the bank's status as a holder of various promis-
sory notes may be involved in each of the plaintiffs'
claims and although each plaintiff was subjected to the
same advertising or other uniform pattern of conduct,
the defendants' liability to each plaintiff will depend
upon specific facts which, by the nature of these trans-
actions, cannot be common to all plaintiffs or to any
substantial number of them.*" (Emphasis added.) *Id.,*
319-321.

The principle which emerges from these cases is
that when a court is faced with the question of
whether a particular lawsuit can proceed on a
representative basis, it must take into account the
practical problems that will arise if the case is
allowed to proceed on a representative basis.

## B. Case at Bar

Two major practical problems will arise if this
case is allowed to proceed on a representative
basis and the plaintiff ultimately prevails on the
merits. The first problem involves the identifica-
tion of the BankAmericard holders who are actu-
ally entitled to some recovery. The second involves
the computation of exactly how much money, if
any, each and every such cardholder would be
entitled to receive, including the computation of
alleged counterclaims on approximately 20,000 ac-
counts.

As noted earlier, over 750,000 persons were
holders of the defendant's credit cards at one time
or another during the time period framed by the
plaintiff's complaint. Not all of these persons
would be entitled to recover damages from the
defendant. According to the defendant, approxi-

mately one-third, or roughly 250,000, of these persons never incurred interest charges. These persons would not be entitled to relief. In addition, corporations and other business entities that acquired credit cards for their employees would not be entitled to recovery. See MCL 450.78; MSA 21.78 (repealed by 1972 PA 284, now MCL 450.1275; MSA 21.200[275]) and MCL 438.61; MSA 19.15(71). Also, it appears that the persons whose credit card accounts were purchased by the defendant from retail stores (estimated at over 165,000) would also not be entitled to recovery, at least with respect to interest charges incurred before the accounts were purchased.

The defendant contends that it or the circuit court would have to examine each of the 750,000 BankAmericard accounts to determine which cardholders would be entitled to recover and that this process would be extremely burdensome and exacerbated by the unsatisfactory nature of the account records. According to the defendant, the records of that time are on microfilm and must be examined manually. They are not amenable to the use of computers or other modern data processing systems. There also is the probability that proofs in addition to the records would be required. The defendant estimates that this identification process would take many years (4,955 man-years) of labor to complete.

Assuming that the accounts must be reviewed manually and that other proofs would be required, it is still not a necessary conclusion that this process would be extremely burdensome. The only accounts that would have to be examined are the accounts of those persons who chose to opt in. The persons who did not affirmatively join would not be involved in the case. If only a small number of

cardholders should opt in, the burden would be much less than that described by the defendant. There might not even be enough to constitute a viable class in light of problems in pursuing the case on a representative basis. This would be a decision for the trial judge. At this point in the case, we have no way of knowing how many cardholders might opt in if given the opportunity. We cannot say that no matter how few cardholders opt in, the practical burden of identifying the cardholders entitled to relief would be so great that the case cannot proceed on a representative basis.

The second major practical problem concerns the computation of individual damages. Because each BankAmericard holder's account history is different with respect to purchases, payments and amount of finance charge incurred, it would be necessary to examine the accounts individually in order to determine the exact amount of damages due, if any. In addition, the defendant alleges that it would have approximately 20,000 counter-claims involving members of the plaintiff class and that other factors could reduce or preclude any recovery. The defendant again contends that it and/or the circuit court would have to examine manually each of the 750,000 accounts and compute the amount of illegal interest charged and that this would take many more years of labor to complete.

Again, the defendant is not necessarily correct. The only accounts that would have to be examined if the bank were liable would be the accounts of those persons who not only chose to opt in, but who also were identified as eligible for recovery. The burden of computing individual damages would depend upon how many cardholders opted in and how many of those, if any, would be found

eligible. At this point there is no way of our knowing how great this burden might be. We also do not know if there would be defenses or counterclaims against any of the persons who might choose to opt in.

Concern has been expressed over the possibility that this lawsuit was instituted and prosecuted as a class action more for the purpose of generating large legal fees for the plaintiff's attorneys than for the purpose of vindicating the rights of the other class members. This may be true, but there are other ways to prevent abuse of the class action device that do not involve precluding all of the class members, some of whom may legitimately wish to sue, from proceeding on a representative basis. First, depending upon the number of legitimate class members who opt in, the court may dismiss the class portion of the suit. Second, the court is not bound by any fee agreement entered into between the representative plaintiff and her attorneys, excepting as to her personal contingent fee contract. See *Bond v Ann Arbor School District,* 383 Mich 693, 705; 178 NW2d 484 (1970), where this Court remanded a class action to circuit court for entry of judgment and an award of attorney fees "as shall be set forth in [an] itemized statement * * * *and approved by the circuit judge"* (emphasis added). The plaintiff in the case at bar has only requested an award of "reasonable" attorney fees. Reasonableness of the fees would depend primarily upon the amount of time the attorneys spent on the case and upon the nature and extent of the benefit conferred upon the intervening class members. Such a fee, plus costs, would be payable from the proceeds of the judgment prior to computation for distribution.

## V. Conclusion

On the basis of the foregoing, we conclude that

the practical burdens involved in allowing this case to proceed on a representative basis may preclude the plaintiff from suing on a representative basis, but these judgments cannot be intelligently made on the basis of the existing record.

The primary insufficiencies have arisen from a partial, but fatal, reliance upon the amended version of FR Civ P 23 and those Federal cases based upon the necessity of affording due process for absent class members who would be bound by a court's judgment if they did not affirmatively *exclude* themselves (opt out) from the litigation. Personal service when possible or "the best notice practicable under the circumstances" is required under that rule.

Because this claim does not qualify for Federal jurisdiction, it is brought in a Michigan court and is subject to state law and rules of procedure applicable to spurious class actions. Under Michigan law and procedure, persons who do not affirmatively *join* (opt in) the litigation are not bound. They are not represented in or touched by the suit, so their due process rights are not affected.

We therefore reverse the Court of Appeals and remand the case to the circuit court with the following instructions:

1. The plaintiff, at her expense, may issue such notice as she wishes or as the court directs;[22]

2. The court shall set a reasonable time period within which class members must opt in in order to be *included* in the case;

3. After the time period set by the court has expired and after such briefing and argument as is

---

[22] See GCR 1963, 208.4.

deemed necessary by the court, the court shall rule on the question of whether allowing the case to proceed on a representative basis will promote the convenient administration of justice, in light of the principles discussed in this Court's opinion and whether plaintiff is an adequate representative of the class.

This Court retains no jurisdiction.

KAVANAGH, WILLIAMS, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, C.J.

FITZGERALD, J., took no part in the decision of this case.

### ADDENDUM

COLEMAN, C.J. The dissent asserts that "the view ultimately accepted by most courts" was that intervention could occur after a judgment on the merits. The official committee notes to the 1966 revision of FR Civ P 23, written by those intimately involved with the rules, offers a somewhat different picture:

"Hitherto, *in a few actions* conducted as 'spurious' class actions and thus nominally designed to extend only to parties and others intervening *before* the determination of liability, courts have *held or intimated* that class members *might* be permitted to intervene *after* a decision on the merits favorable to their interests, in order to secure the benefits of the decision for themselves, although they would presumably be unaffected by an unfavorable decision."[1] (Emphasis added.)

Professor Moore, the principal drafter of old FR Civ P 23, offers a similar assessment:

"*Some courts * * * subscribed to the view that members of the class would be permitted to intervene *after* an adjudication on the merits favorable to their interests, in order to secure the benefits of the decision for

---

[1] 3B Moore's Federal Practice, p 23-31.

themselves, although they would not be affected by an unfavorable decision."[2] (Emphasis changed; footnotes omitted.)

Professor Moore's analysis of this theory of one-way intervention is illuminating:

"*It is submitted that this theory was erroneous.* If the decision was not res judicata for or against those not parties, it should have run only to the benefit of those who had intervened *before* a trial on the merits. Otherwise other members of the class might have remained on the sidelines while the parties litigated the issues, with no risk of being bound by an unfavorable decision, and then have come in to take advantage of a favorable ruling."[3] (Emphasis added; footnotes omitted.)

Footnote 1 of the dissent quotes from the majority opinion. The quotation omits a pertinent footnote from the majority opinion (footnote 7). The cases cited in that missing footnote explain the situation of a changing class, especially where the changes are caused by the death of an original class member and the devolution of that member's interests to others.

LEVIN, J. *(concurring in part; dissenting in part).* I concur in Parts I through III of the Court's opinion, except the sentences in Part III B and III F referring to "the convenient administration of justice" and the suggestion in Part III D(2) that "on remand the trial court may wish to consider" requiring the plaintiff to post security.

I dissent from the excepted sentences in Part III and from Part IV, announcing a doctrine of convenient administration of justice. I also dissent from Part V which authorizes the trial court to require that, before the case may proceed to a determina-

---

[2] *Id.,* Appendix to Chapter 23, p 23-2854.

[3] *Id.,* p 23-2917.

tion of liability as a class action, notice be given to class members of a time within which they must, if at all, opt in, and requires that, after the time for opting in has expired, the trial court then rule whether permitting the case to proceed as a class action will promote the convenient administration of justice.

## I

While this Court does not in terms direct the trial court to require the plaintiff to give notice, it indicates that notice ought to be given so that a determination can be made whether permitting the case to proceed as a class action "will promote the convenient administration of justice, in light of the principles discussed in this Court's opinion and whether plaintiff is an adequate representative of the class".

Manifestly, it is intended that such a determination will be made before "[the] case is allowed to proceed" as a class action, and it is expected that the trial court will direct the plaintiff to give notice and that the court "shall set a reasonable time period within which class members must opt in in order to be *included* in the case".

The Court decides that such an order may be entered and all but directs that it be done without discussing whether there is justification for requiring the giving of notice and that class members opt in *before* a determination of liability.

## A

The class action rule, GCR 1963, 208, incorporates the language of the original Federal class action rule (FR Civ P 23) and a proposed amendment to that rule which was never adopted. While

there was some division of authority, the view ultimately accepted by most courts was that, where there is an identifiable class, unnamed plaintiffs will, after a determination of liability, be permitted "to intervene and share in the judgment obtained by their representatives, insofar as each is able to prove both membership in the class and damages".[1]

---

[1] *Union Carbide & Carbon Corp v Nisley*, 300 F2d 561, 588 (CA 10, 1961). Similarly, see *Foster v Detroit*, 405 F2d 138, 146 (CA 6, 1968); *York v Guaranty Trust Co of New York*, 143 F2d 503 (CA 2, 1944); *Escott v Barchris Construction Corp*, 340 F2d 731 (CA 2, 1965), cert den sub nom *Drexel & Co v Hall*, 382 US 816 (1965); *Hurd v Illinois Bell Telephone Co*, 234 F2d 942 (CA 7, 1956), cert den sub nom *Seybold v Western Electric Co*, 352 US 918 (1956); *State Wholesale Grocers v Great Atlantic & Pacific Tea Co*, 24 FRD 510 (ND Ill, 1959); *Tolliver v Cudahy Packing Co*, 39 F Supp 337 (ED Tenn, 1941); see, also, *American Pipe & Construction Co v Utah*, 414 US 538, 549; 94 S Ct 756; 38 L Ed 2d 713 (1974); *Katz v Carte Blanche Corp*, 496 F2d 747, 759-760 (CA 3, 1974); Kalven & Rosenfield, *The Contemporary Function of the Class Suit*, 8 U Chi L Rev 684 (1941). *Cf. Pentland v Dravo Corp*, 152 F2d 851 (CA 3, 1945).

But see, *e.g.*, *Abram v San Joaquin Cotton Oil Co*, 46 F Supp 969 (SD Cal, 1942); *Lockwood v Hercules Powder Co*, 7 FRD 24 (WD Mo, 1947); *Shipley v Pittsburgh & L E R Co*, 7 FRD 33 (WD Pa, 1947); *cf. Bascom Launder Corp v Telecoin Corp*, 204 F2d 331 (CA 2, 1953). Most of the cases in which courts refused to allow intervention after a finding of defendant's liability arose under the Fair Labor Standards Act.

Even if barred from directly participating in a judgment favorable to the class, absent class members may, as a practical matter, benefit from a favorable decision. Other courts, on the basis of stare decisis, may follow the legal theory adopted in the earlier case. Also, a judgment favorable to the class may bind the defendant in subsequent litigation; the doctrine of mutuality of estoppel has fallen into disrepute, see *Blonder-Tongue Laboratories, Inc v University of Illinois Foundation*, 402 US 313; 91 S Ct 1434; 28 L Ed 2d 788 (1971), and *Parklane Hosiery Co v Shore*, — US —; 99 S Ct 645; 58 L Ed 2d 552 (1979). Allowing intervention after a judgment favorable to the class may not, therefore, be unfair to the defendant, and may be useful insofar as it avoids unnecessary duplicative litigation likely to occur when absent class members expect to win on the basis of a prior decision. See 7A Wright & Miller, Federal Practice & Procedure, § 1784, pp 120-121, § 1800, p 260.

It was generally held that statutes of limitation are tolled during the pendency of a class action as to absent class members who intervene after a favorable judgment as well as to those who intervened before judgment. On this point Professor Moore and the decisions are in agreement. See 3B Moore's Federal Practice, Appendix to

The practice under the old Federal rule was to permit the case to be determined on the merits before absent class members were notified of their opportunity to opt in. This came to be called "one-way intervention" and was seen as objectionable because absent class members could take advantage of a favorable judgment but were not bound by an unfavorable judgment; they had not been notified of the pendency of the action and, indeed, even if notified were not required to respond to the notice. That and other dissatisfaction with the rule brought about its amendment in 1966 (after GCR 1963, 208 took its present form) to require that notice be sent to each class member and to provide that unless he opts *out* by a specified date, the judgment, whether favorable or not, would be binding upon him.[2]

Adoption by this Court of a corresponding rule change may be appropriate. This case, however, as the Court acknowledges, is governed by the language taken from the old Federal rule; under that rule, as it was construed and applied in practice, absent class members were not put to an election of whether to opt in until after a determination of liability.

---

Chapter 23, ¶ 23.12, p 23-2919; *American Pipe & Construction Co v Utah, supra,* pp 549-550. See, also, 7A Wright & Miller, *supra,* § 1800, pp 262-264. Whether such tolling extends to those who do not intervene is indeed a separate question, raising policy questions regarding the propriety of differentiating between those who ultimately intervene and those who do not which may be avoided by allowing post-judgment intervention or possibly by adopting a revised rule (see Part V and Appendix) prescribing an opt-out procedure.

This Court acknowledges:

"The fact that the membership of the group may change during the course of the litigation does not render the group unidentifiable. If the members of the group can be identified *at the time of the judgment,* the requirement that the group be identifiable is satisfied." (Emphasis supplied.)

[2] *American Pipe & Construction Co v Utah, supra,* p. 547; 7A Wright & Miller, *supra,* § 1789, p 175.

## B

The Court today adopts restrictive features based on both the new and old Federal rules; it incorporates the new rule's requirement of notice[3] before a determination of liability (but not its opt-out provision), and authorizes the judge to bar absent class members from opting in, pursuant to the old rule, after there has been a determination of liability.

The advisory committee on the revised Federal rule "specifically rejected the notion of requiring absent class members to opt-into the action to secure its benefits".[4] The reason for preferring opt out to opt in was that it "assures that small claimants who would be unable to protect their rights through separate suits can take advantage of the judgment in the class action without the burden of actually participating".[5]

The Court, without any apparent recognition that what it may be doing is, in effect, to preclude the maintenance of class actions where small claimants are involved, chooses, without discussion, to establish this additional obstacle to the maintenance of a class action. The claimant, however small the amount of his claim, must hereafter take affirmative action to be included in the case before it is decided whether it may be maintained as a class action.[6]

To be sure, the old Federal rule, and rule 208

---

[3] The Court does not prescribe the form of the notice to be given on remand, which apparently can be by publication because those who do not opt in are not bound by the judgment.

[4] 7A Wright & Miller, *supra,* § 1787, p 157.

[5] *Id.*

[6] Professor Vestal states one of the reasons the uniform act (see Part V and Appendix) adopts (as did the new Federal rule) opt out instead of opt in was that "all evidence points to a substantial lack of knowledge on the part of the members of the class of the conse-

modeled on it, is an opt-in rule. It did not, however, discourage small claimants from taking advantage of a favorable judgment because, as construed and applied, they could take advantage of such a judgment although they did not intervene or participate until after the judgment had been rendered. It is the combination of opt in and barring intervention after a favorable judgment which will discourage small claimants.

## II

The revised Federal rule provides for consideration of concepts similar to those which this Court today enunciates without revision of the court rule.[7]

The Court asserts that those concepts became part of our jurisprudence under "the rubric of 'the

---

quences of participation. The decisions made by many class members are not based on an understanding of the alternatives offered. It would seem to be reasonable to say that inaction should be interpreted as a willingness to participate in an action which will be beneficial". Vestal, *Uniform Class Actions*, 63 ABA J 837, 838 (1977).

He adds: "This same problem—opt-in versus opt-out—was faced by the draftsmen of the new New York class action act. An early New York proposal provided that the court could limit the class to those opting in, but in the final version there is a provision only for opting out. In Canada the Combines Investigation Act Amendments proposed this year also provide for opting out." *Id.,* p 839.

[7] Revised FR Civ P 23 provides that where it is sought to maintain a class action on the ground that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members", the court must find "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" and that in reaching that decision the court should consider "the difficulties likely to be encountered in the management of a class action". The rule also requires that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained". The old Federal rule and rule 208.1(3) require a common question of law or fact but do not mandate that the common question *predominate.*

Compare §§ 2 and 3 of the Uniform Class Actions Act/Rule in the attached Appendix.

convenient administration of justice' ". The Court refers to five Michigan cases,. *Young v Thendara, Inc,* 328 Mich 42; 43 NW2d 58 (1950); *Bajorek v Kurtz,* 335 Mich 58; 55 NW2d 727 (1952); *Hardware Dealers Mutual Ins Co .v R H Hidey, Inc,* 349 Mich 490; 84 NW2d 795 (1957) (CARR, J.); *Palmer Park Theater Co v Highland Park,* 362 Mich 326; 106 NW2d 845 (1961); and *Freeman v State-Wide Carpet Distributors, Inc,* 365 Mich 313; 112 NW2d 439 (1961).[8]

---

[8] In the instant case, in contrast with the cases cited by the Court, it has been determined that there is a common question of law or fact.

In *Young v Thendara, Inc,* 328 Mich 42, 48; 43 NW2d 58 (1950), it was the disparity of sources from which titles to lots had been acquired, resulting in an absence of a common question of law or fact, which prompted the Court to speak of "the impracticability of considering all owners of lots in the subdivision as a class for the purpose of decreeing their individual rights, in the case at bar". No reference was made to the former statute, 1948 CL 608.1, concerning joinder of parties or to the "convenient administration of justice".

In *Bajorek v Kurtz,* 335 Mich 58, 63-64; 55 NW2d 727 (1952), the Court said that "some plaintiffs are seeking to recover for items of damage not asserted by other plaintiffs". Nor was there a common question of law or fact: "It cannot be said with certainty that the same issues will be presented in all of the 25 cases alleged in the declaration and covered by the bill of particulars. Proofs may show damage in some cases, but not in others, and defenses may exist against the rights of certain plaintiffs that are not available against other plaintiffs." The Court concluded that "in a situation of the character here involved", plaintiffs failed to show "sufficient grounds" for joinder of "causes of action in order to promote the convenient administration of justice". 1948 CL 608.1.

It was similarly declared in *Hardware Dealers Mutual Ins Co v R H Hidey, Inc,* 349 Mich 490, 515; 84 NW2d 795 (1957) (CARR, J.)—where there was no majority opinion—that "it may not be said that the same questions will arise in each case".

In *Palmer Park Theater Co v Highland Park,* 362 Mich 326, 343-344; 106 NW2d 845 (1961), the Court quoted from the portion of the *Bajorek* opinion which stated that "[i]t cannot be said with certainty that the same issues will be presented in all of the 25 cases". *(Bajorek, supra,* p 64.) In stating that "the same rule of law would apply" to a class action, the Court did not incorporate the *alternative* basis for joinder, convenience in the administration of justice, into the class action rule as a *precondition* to the maintenance of any class action. The Court made very clear what it meant when it said that "the same rule would apply" by the language *immediately following:* "The trial court in the instant case had before it separate rather than

Of these, only in *Young* and *Palmer Park Theater Co* did the plaintiff, in the complaint, seek to maintain a class action, but in neither opinion did the Court advert to the phrase "convenient administration of justice". The phrase was considered in *Bajorek, Hardware* and *Freeman,* where the issue was whether plaintiffs whose causes of action were several could join together in one action.

The essential holding in all five cases was that because of the absence of the requisite common question of law or fact joinder was not permitted. In the instant case the Court acknowledges that the common questions of law or fact criterion has been satisfied.

In holding that the actions could not be maintained, the Court in *Bajorek, Hardware* and *Freeman* considered a statute concerning permissive joinder of parties which contains the phrase "the convenient administration of justice". It provided that where there is more than one plaintiff, the

joint actions and would have needed proofs with particular reference to the effects the ordinance would have upon each of the members of the class. No such proofs were offered. Therefore, he correctly decided this was an improper class action." The Court, thus, said that the trial court reached the right conclusion because the requisite common question of law or fact was not shown to be present, not because maintenance of the action would not serve the convenient administration of justice.

In *Freeman v State-Wide Carpet Distributors, Inc,* 365 Mich 313, 320; 112 NW2d 439 (1961), the Court, speaking of *Hardware,* said: "Both opinions for affirmance relied upon the fact that different questions of law and fact would be involved in the various claims or in defense thereto." Joinder was not permitted in *Freeman* because of "the very substantial disparity of issues of law and facts". The complaint in *Freeman* did not assert a cause of action in behalf of a class. Plaintiffs nevertheless asked that it "should now be considered to be so amended as to constitute a class action". In refusing to allow the action to be so maintained the Court did not discuss the "convenient administration of justice". It spoke of "disparity of issues" and the absence of a common question of law or of fact: "Although the bank's status as a holder of various promissory notes may be *involved* in each of the plaintiffs' claims * * * the nature of these transactions, cannot be *common* to all plaintiffs or to any substantial number of them." *Id.,* p 321.

causes of action "must be joint", and if there is "more than 1 defendant, the liability must be one asserted against all of the material defendants, *or* sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice". 1948 CL 608.1 (emphasis supplied).

The concept expressed in the statute has been carried forward into present GCR 1963, 206,[9] permitting persons to join in one action as plaintiffs and the joinder in one action of defendants where the action could not otherwise be so maintained "if it appears that their presence in the action will promote the convenient administration of justice". This, however, is not, under rule 206, a condition precedent to such permissive joinder if, among other factors, there is a common question of law or fact. It is an alternative basis for joinder if there is no common question of law or fact. The phrase "the convenient administration of justice" appears nowhere in class action rule 208; the sole joinder criterion for a spurious class action (subdivision 1[3]) is "*a* common question of law or fact affecting

---

[9] "Permissive Joinder. All persons may join in 1 action as plaintiffs

"(1) if they assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action; or

"(2) if it appears that their presence in the action will promote the convenient administration of justice.

"All persons may be joined in 1 action as defendants

"(1) if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action; or

"(2) if it appears that their presence in the action will promote the convenient administration of justice.

"A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be rendered for 1 or more of the parties against 1 or more of the parties as the rights and liabilities of the parties appear." GCR 1963, 206.1.

the several rights and a common relief is sought".[10]
(Emphasis supplied.)

It is noteworthy that not one of the five Michigan cases relied on by the Court for its statement that the "convenient administration of justice" limitation applies to class actions is cited in the brief of either the plaintiff or defendant. One would think that if this Court had "recognized that there is [this] one further requirement" counsel for the defendant in their assiduous research would have discovered this requirement and brought it to the Court's attention. Counsel for the

[10] While neither the defendants nor the Court have suggested that rule 206.1(2) is a gloss on rule 208.1(3), I have considered that possible argument because of the Court's blending of cases decided under the joinder statute with class action cases.

Rule 208.1(3), concerning spurious class actions, parallels rule 206.1(1) in that it requires a common question of law or fact for joinder; it differs in its omission of the rule 206.1(1) requirement that the causes of action joined arise from "the same transaction, occurrence, or series of transactions or occurrences". While many spurious class actions do not arise out of the same transaction or occurrence and, thus, would have to be brought under rule 206.1(2) if brought under rule 206 at all, this does not mean that rule 206.1(2) is a gloss upon rule 208.1(3). The differing language of rule 206 and rule 208 indicates that neither may justifiably be superimposed upon the other. Only one of the several criteria stated in rule 206—common question of law or fact—is stated in rule 208.1(3); if it was intended that other criteria stated in rule 206 be incorporated in 208.1(3) one would expect that they too would be there stated.

Yet even if rule 206.1(2) were a gloss upon rule 208.1(3), nothing would be added to the already explicit requirements of that section. The term "convenient administration of justice" has acquired a meaning under rule 206 and its predecessor statute. In *Bajorek v Kurtz, supra,* because plaintiffs were seeking differing items of damage, and in *Bajorek, Hardware,* and *Freeman v State-Wide Carpet, Inc, supra,* because of the absence of a common question of law or fact, it was said that "sufficient grounds" had not been shown for joinder of causes of action to promote the convenient administration of justice. See footnote 8, *supra.* The phrase "convenient administration of justice" has not been defined in any other context. Old Federal rule 23, on which rule 208.1(3) is based, was specifically designed to permit class actions although the damages were of varying amounts. 3B Moore's Federal Practice, Appendix to Chapter 23, ¶ 23.10[6], p 23-2721; 7 Wright & Miller, Federal Practice & Procedure, § 1752. Rule 208.1(3) expressly incorporates the common question of law or fact criterion.

defendant relies primarily on Federal cases decided under the new Federal rule which we all agree are not in point.[11] Further, if there were cases in point decided under the old Federal rule, defendant's counsel would, I expect, have relied on them; our own limited research failed to disclose any such case.[12]

The Court has failed to demonstrate that the old Federal rule, incorporated into GCR 1963, 208, as heretofore construed authorized a judge to dismiss a class action on the ground that its maintenance would not serve the convenient administration of justice.

Moreover, the Committee Report accompanying a proposed amendment to the old Federal rule, the gist of which was adopted as subdivision 4 of GCR 1963, 208, states that the authority there conferred must be exercised "based on inadequate representation, however, rather than on general considerations of convenient judicial administration."[13]

### III

The appropriateness of requiring security is not an issue on appeal and should not be injected by this Court on its own initiative.[14]

---

[11] The memorandum opinion in *Northview Construction Co v St Clair Shores (On Rehearing)*, 399 Mich 184, 202; 249 NW2d 290 (1976), which cites a case decided under the new Federal rule, appears to incorporate a limitation from the new Federal rule. I signed that opinion and acknowledge the apparent error.

[12] See Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv L Rev 356, 390, fn 132 (1967), suggesting that the court has discretion in certifying a class where "the matter was too diffuse to be handled as a class action". In the cases cited, however, the power of the court was invoked pursuant to its authority to determine the adequacy of representation.

[13] Excerpted in 3B Moore's Federal Practice, ¶ 23.01[5], p 23-18. See fn 12 *supra*.

[14] This Court states pertinently:

"If, on the other hand, the judgment will bind only those members

IV

The Court perceives a need to incorporate into the jurisprudence of this state concepts reflected in the revised Federal rule. If this is to be done at all, it should be done in an orderly way after study of the competing considerations and alternatives, promulgation of a revised court rule, appropriate notice to bench and bar, opportunity for comment and consideration of comments.

A revised rule could govern future conduct of this litigation. Until the rule is revised, however, this case should be decided in accordance with the concepts heretofore developed in the application of the old Federal rule and rule 208 as construed and applied in practice.

In all events, class members should not be required to opt in until the conclusion of the liability phase of the litigation.

For the reasons stated, I cannot join in the Court's disposition.

V

This litigation and other cases, some of which have reached the appellate courts of this state, illustrate the inadequacy of our present class action rule. After decisions of the United States Supreme Court,[15] which the National Conference of Commissioners on Uniform State Laws said "se-

of the class who decide and affirmatively indicate that they wish to be included in the class and to be represented by the class representative and the chosen attorneys (commonly referred to as 'opting in'), then there is less reason for such finely drawn surrogate protection by the court as Federal cases mandate. Those not affirmatively 'opting in' are not bound by any judgment."

[15] *Zahn v International Paper Co,* 414 US 291; 94 S Ct 505; 38 L Ed 2d 511 (1973); *Eisen v Carlisle & Jacquelin,* 417 US 156; 94 S Ct 2140; 40 L Ed 2d 732 (1974).

verely limited the availability of the present [re-vised] Rule 23 as a group remedy", the commis-sioners promulgated a Uniform Class Actions Act/Rule. The commissioners noted that because of the Federal decisions, "[m]ore classes with claims will be seeking redress in state courts"; since many states modeled their class action statutes or rules on the old or new Federal rules, there was a need for a class action statute or rule which would provide a means by which class actions could continue to be maintained. 12 ULA (Cum Supp, 1978) pp 11-12.

The Uniform Class Actions Act/Rule (annexed hereto as an appendix) incorporates a number of the features of the new Federal rule, but avoids making them preclusive. At the same time, it seeks to meet the more substantial objections to the old and new Federal rules that have been voiced by plaintiffs and defendants. Allan D. Ves-tal, chairperson of the committee on the uniform act/rule, describes it in Vestal, *Uniform Class Actions,* 63 ABA J 837 (1977). Critical comments by a lawyer for plaintiffs and a lawyer for defend-ants follow (pp 840 and 842). See, also, Comment, *Class Actions and the Uniform Class Actions Act: Function and Structure,* 11 Loyola of Los Angeles L Rev 335 (1978).

I do not mean to suggest that we should uncriti-cally adopt a Uniform Class Actions Rule. It does, however, appear to be a more balanced approach from both plaintiffs' and defendants' points of view to the problems which confront state courts in considering class actions than either the old. or new Federal rules.

A Uniform Class Actions Rule would clearly be better than the approach adopted by the Court today in introducing new concepts and terms

("practical problems", "practical burdens") into the jurisprudence without guidance to bench or bar regarding the meaning of these concepts and terms in this context.

I would publish for comment by bench and bar the Uniform Class Actions Rule as a proposed court rule with a view to considering suggestions of bench and bar and adoption of a revised rule 208.

## Uniform Class Actions Rule

*Section 1. Commencement of a Class Action.*

One or more members of a class may sue or be sued as representative parties on behalf of all in a class action if:

(1) the class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable; and

(2) there is a question of law or fact common to the class.

*Section 2. Certification of Class Action.*

(a) Unless deferred by the court, as soon as practicable after the commencement of a class action the court shall hold a hearing and determine whether or not the action is to be maintained as a class action and by order certify or refuse to certify it as a class action.

(b) The court may certify an action as a class action, if it finds that (1) the requirements of Section 1 have been satisfied, (2) a class action should be permitted for the fair and efficient adju-

dication of the controversy, and (3) the representative parties fairly and adequately will protect the interests of the class.

(c) If appropriate, the court may (1) certify an action as a class action with respect to a particular claim or issue, (2) certify an action as a class action to obtain one or more forms of relief, equitable, declaratory, or monetary, or (3) divide a class into subclasses and treat each subclass as a class.

*Section 3. Criteria Considered.*

(a) In determining whether the class action should be permitted for the fair and efficient adjudication of the controversy, as appropriately limited under Section 2(c), the court shall consider, and give appropriate weight to, the following and other relevant factors:

(1) whether a joint or common interest exists among members of the class;

(2) whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class;

(3) whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

(4) whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief

or corresponding declaratory relief appropriate with respect to the class as a whole;

(5) whether common questions of law or fact predominate over any questions affecting individual members;

(6) whether other means of adjudicating the claims and defenses are impracticable or inefficient;

(7) whether a class action offers the most appropriate means of adjudicating the claims and defenses;

(8) whether members not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions;

(9) whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding;

(10) whether it is desirable to bring the class action in another forum;

(11) whether management of the class action poses unusual difficulties;

(12) whether any conflict of laws issues involved pose unusual difficulties; and

(13) whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.

(b) In determining under Section 2(b) that the representative parties fairly and adequately will protect the interests of the class, the court must find that:

(1) the attorney for the representative parties will adequately represent the interests of the class;

(2) the representative parties do not have a conflict of interest in the maintenance of the class action; and

(3) the representative parties have or can acquire adequate financial resources, considering Section 17, to assure that the interests of the class will not be harmed.

## Section 4. Order on Certification.

(a) The order of certification shall describe the class and state: (1) the relief sought, (2) whether the action is maintained with respect to particular claims or issues, and (3) whether subclasses have been created.

(b) The order certifying or refusing to certify a class action shall state the reasons for the court's ruling and its findings on the facts listed in Section 3(a).

(c) An order certifying or refusing to certify an action as a class action is appealable.

(d) Refusal of certification does not terminate the action, but does preclude it from being maintained as a class action.

## Section 5. Amendment of Certification Order.

(a) The court may amend the certification order at any time before entry of judgment on the merits. The amendment may (1) establish subclasses, (2) eliminate from the class any class member who was included in the class as certified, (3) provide for an adjudication limited to certain claims or issues, (4) change the relief sought, or (5) make any other appropriate change in the order.

(b) If notice of certification has been given pursuant to Section 7, the court may order notice of the amendment of the certification to be given in terms and to any members of the class the court directs.

(c) The reasons for the court's ruling shall be set forth in the amendment of the certification order.

(d) An order amending the certification order is appealable. An order denying the motion of a member of a defendant class, not a representative party, to amend the certification order is appealable if the court certifies it for immediate appeal.

## *Section 6. Jurisdiction over Multi-State Classes.*

(a) A court of this state may exercise jurisdiction over any person who is a member of the class suing or being sued if:

(1) a basis for jurisdiction exists or would exist in a suit against the person under the law of this state; or

(2) the state of residence of the class member, by class action law similar to subsection (b), has made its residents subject to the jurisdiction of the courts of this state.

(b) A resident of this state who is a member of a class suing or being sued in another state is subject to the jurisdiction of that state if by similar class action law it extends reciprocal jurisdiction to this state.

## *Section 7. Notice of Action.*

(a) Following certification, the court by order, after hearing, shall direct the giving of notice to the class.

(b) The notice, based on the certification order and any amendment of the order, shall include:

(1) a general description of the action, including the relief sought, and the names and addresses of the representative parties;

(2) a statement of the right of a member of the

class under Section 8 to be excluded from the action by filing an election to be excluded, in the manner specified, by a certain date;

(3) a description of possible financial consequences on the class;

(4) a general description of any counterclaim being asserted by or against the class, including the relief sought;

(5) a statement that the judgment, whether favorable or not, will bind all members of the class who are not excluded from the action;.

(6) a statement that any member of the class may enter an appearance either personally or through counsel;

(7) an address to which inquiries may be directed; and

(8) other information the court deems appropriate.

(c) The order shall prescribe the manner of notification to be used and specify the members of the class to be notified. In determining the manner and form of the notice to be given, the court shall consider the interests of the class, the relief requested, the cost of notifying the members of the class, and the possible prejudice to members who do not receive notice.

(d) Each member of the class, not a representative party, whose potential monetary recovery or liability is estimated to exceed $100 shall be given personal or mailed notice if his identity and whereabouts can be ascertained by the exercise of reasonable diligence.

(e) For members of the class not given personal or mailed notice under subsection (d), the court shall provide, as a minimum, a means of notice reasonably calculated to apprise the members of the class of the pendency of the action. Techniques

calculated to assure effective communication of information concerning commencement of the action shall be used. The techniques may include personal or mailed notice, notification by means of newspaper, television, radio, posting in public or other places, and distribution through trade, union, public interest, or other appropriate groups.

(f) The plaintiff shall advance the expense of notice under this section if there is no counterclaim asserted. If a counterclaim is asserted the expense of notice shall be allocated as the court orders in the interest of justice.

(g) The court may order that steps be taken to minimize the expense of notice.

*Section 8. Exclusion.*

(a) A member of a plaintiff class may elect to be excluded from the action unless (1) he is a representative party, (2) the certification order contains an affirmative finding under paragraph (1), (2), or (3) of Section 3(a), or (3) a counterclaim under Section 11 is pending against the member or his class or subclass.

(b) Any member of a plaintiff class entitled to be excluded under subsection (a) who files an election to be excluded, in the manner and in the time specified in the notice, is excluded from and not bound by the judgment in the class action.

(c) The elections shall be made a part of the record in the action.

(d) A member of a defendant class may not elect to be excluded.

*Section 9. Conduct of Action.*

(a) The court on motion of a party or its own

motion may make or amend any appropriate order dealing with the conduct of the action including, but not limited to, the following: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given as the court directs, of (i) any step in the action, (ii) the proposed extent of the judgment, or (iii) the opportunity of members to signify whether they consider the representation fair and adequate, to enter an appearance and present claims or defenses, or otherwise participate in the action; (3) imposing conditions on the representative parties or on intervenors; (4) inviting the attorney general to participate with respect to the question of adequacy of class representation; (5) making any other order to assure that the class action proceeds only with adequate class representation; and (6) making any order to assure that the class action proceeds only with competent representation by the attorney for the class.

(b) A class member not a representative party may appear and be represented by separate counsel.

*Section 10.   Discovery by or Against Class Members.*

(a) Discovery under applicable discovery rules may be used only on order of the court against a member of the class who is not a representative party or who has not appeared. In deciding whether discovery should be allowed the court shall consider, among other relevant factors, the timing of the request, the subject matter to be covered, whether representatives of the class are

seeking discovery on the subject to be covered, and whether the discovery will result in annoyance, oppression, or undue burden or expense for the member of the class.

(b) Discovery by or against representative parties or those appearing is governed by the rules dealing with discovery by or against a party to a civil action.

*Section 11. Counterclaims.*

(a) A defendant in an action brought by a class may plead as a counterclaim any claim the court certifies as a class action against the plaintiff class. On leave of court, the defendant may plead as a counterclaim a claim against a member of the class or a claim the court certifies as a class action against a subclass.

(b) Any counterclaim in an action brought by a plaintiff class must be asserted before notice is given under Section 7.

(c) If a judgment for money is recovered against a party on behalf of a class, the court rendering judgment may stay distribution of any award or execution of any portion of a judgment allocated to a member of the class against whom the losing party has pending an action in or out of state for a judgment for money, and continue the stay so long as the losing party in the class action pursues the pending action with reasonable diligence.

(d) A defendant class may plead as a counterclaim any claim on behalf of the class that the court certifies as a class action against the plaintiff. The court may certify as a class action a counterclaim against the plaintiff on behalf of a subclass or permit a counterclaim by a member of the class. The court shall order that notice of the

counterclaim by the class, subclass, or member of the class be given to the members of the class as the court directs, in the interest of justice.

(e) A member of the class or subclass asserting a counterclaim shall be treated as a member of a plaintiff class for the purpose of exclusion under Section 8.

(f) The court's refusal to allow, or the defendant's failure to plead, a claim as a counterclaim in a class action does not bar the defendant from asserting the claim in a subsequent action.

*Section 12. Dismissal or Compromise.*

(a) Unless certification has been refused under Section 2, a class action, without the approval of the court after hearing, may not be (1) dismissed voluntarily, (2) dismissed involuntarily without an adjudication on the merits, or (3) compromised.

(b) If the court has certified the action under Section 2, notice of hearing on the proposed dismissal or compromise shall be given to all members of the class in a manner the court directs. If the court has not ruled on certification, notice of hearing on the proposed dismissal or compromise may be ordered by the court which shall specify the persons to be notified and the manner in which notice is to be given.

(c) Notice given under subsection (b) shall include a full disclosure of the reasons for the dismissal or compromise including, but not limited to, (1) any payments made or to be made in connection with the dismissal or compromise, (2) the anticipated effect of the dismissal or compromise on the class members, (3) any agreement made in connection with the dismissal or compromise, (4) a description and evaluation of alternatives consid-

ered by the representative parties and (5) an explanation of any other circumstances giving rise to the proposal. The notice also shall include a description of the procedure available for modification of the dismissal or compromise.

(d) On the hearing of the dismissal or compromise, the court may:

(1) as to the representative parties or a class certified under Section 2, permit dismissal with or without prejudice or approve the compromise;

(2) as to a class not certified, permit dismissal without prejudice;

(3) deny the dismissal;

(4) disapprove the compromise; or

(5) take other appropriate action for the protection of the class and in the interest of justice.

(e) The cost of notice given under subsection (b) shall be paid by the party seeking dismissal, or as agreed in case of a compromise, unless the court after hearing orders otherwise.

*Section 13. Effect of Judgment on Class.*

In a class action certified under Section 2 in which notice has been given under Section 7 or 12, a judgment as to the claim or particular claim or issue certified is binding, according to its terms, on any member of the class who has not filed an election of exclusion under Section 8. The judgment shall name or describe the members of the class who are bound by its terms.

*Section 14. Costs.*

(a) Only the representative parties and those members of the class who have appeared individu-

ally are liable for costs assessed against a plaintiff class.

(b) The court shall apportion the liability for costs assessed against a defendant class.

(c) Expenses of notice advanced under Section 7 are taxable as costs in favor of the prevailing party.

*Section 15. Relief Afforded.*

(a) The court may award any form of relief consistent with the certification order to which the party in whose favor it is rendered is entitled including equitable, declaratory, monetary, or other relief to individual members of the class or the class in a lump sum or installments.

(b) Damages fixed by a minimum measure of recovery provided by any statute may not be recovered in a class action.

(c) If a class is awarded a judgment for money, the distribution shall be determined as follows:

(1) The parties shall list as expeditiously as possible all members of the class whose identity can be determined without expending a disproportionate share of the recovery.

(2) The reasonable expense of identification and distribution shall be paid, with the court's approval, from the funds to be distributed.

(3) The court may order steps taken to minimize the expense of identification.

(4) The court shall supervise, and may grant or stay the whole or any portion of, the execution of the judgment and the collection and distribution of funds to the members of the class as their interests warrant.

(5) The court shall determine what amount of the funds available for the payment of the judg-

ment cannot be distributed to members of the class individually because they could not be identified or located or because they did not claim or prove the right to money apportioned to them. The court after hearing shall distribute that amount, in whole or in part, to one or more states as unclaimed property or to the defendant.

(6) In determining the amount, if any, to be distributed to a state or to the defendant, the court shall consider the following criteria: (i) any unjust enrichment of the defendant; (ii) the willfulness or lack of willfulness on the part of the defendant; (iii) the impact on the defendant of the relief granted; (iv) the pendency of other claims of other classes against the defendant; (v) any criminal sanction imposed on the defendant; and (vi) the loss suffered by the plaintiff class.

(7) The court, in order to remedy or alleviate any harm done, may impose conditions on the defendant respecting the use of the money distributed to him.

(8) Any amount to be distributed to a state shall be distributed as unclaimed property to any state in which are located the last known addresses of the members of the class to whom distribution could not be made. If the last known addresses cannot be ascertained with reasonable diligence, the court may determine by other means what portion of the unidentified or unlocated members of the class were residents of a state. A state shall receive that portion of the distribution that its residents would have received had they been identified and located. Before entering an order distributing any part of the amount to a state, the court shall give written notice of its intention to make distribution to the attorney general of the state of the residence of any person given notice under

Section 7 or 12 and shall afford the attorney general an opportunity to move for an order requiring payment to the state.

*Section 16. Attorney's Fees.*

(a) Attorney's fees for representing a class are subject to control of the court.

(b) If under an applicable provision of law a defendant or defendant class is entitled to attorney's fees from a plaintiff class, only representative parties and those members of the class who have appeared individually are liable for those fees. If a plaintiff is entitled to attorney's fees from a defendant class, the court may apportion the fees among the members of the class.

(c) If a prevailing class recovers a judgment for money or other award that can be divided for the purpose, the court may order reasonable attorney's fees and litigation expenses of the class to be paid from the recovery.

(d) If the prevailing class is entitled to declaratory or equitable relief, the court may order the adverse party to pay to the class its reasonable attorney's fees and litigation expenses if permitted by law in similar cases not involving a class or the court finds that the judgment has vindicated an important public interest. However, if any monetary award is also recovered, the court may allow reasonable attorney's fees and litigation expenses only to the extent that a reasonable portion of that award is insufficient to defray the fees and expenses.

(e) In determining the amount of attorney's fees for a prevailing class the court shall consider the following factors:

(1) the time and effort expended by the attorney

in the litigation, including the nature, extent, and quality of the services rendered;

(2) results achieved and benefits conferred upon the class;

(3) the magnitude, complexity, and uniqueness of the litigation;

(4) the contingent nature of success;

(5) in cases awarding attorney's fees and litigation expenses under subsection (d) because of the vindication of an important public interest, the economic impact on the party against whom the award is made; and

(6) appropriate criteria in the state's Code of Professional Responsibility.

*Section 17. Arrangements for Attorney's Fees and Expenses.*

(a) Before a hearing under Section 2(a) or at any other time the court directs, the representative parties and the attorney for the representative parties shall file with the court, jointly or separately: (1) a statement showing any amount paid or promised them by any person for the services rendered or to be rendered in connection with the action or for the costs and expenses of the litigation and the source of all of the amounts; (2) a copy of any written agreement, or a summary of any oral agreement, between the representative parties and their attorney concerning financial arrangements or fees and (3) a copy of any written agreement, or a summary of any oral agreement, by the representative parties or the attorney to share these amounts with any person other than a member, regular associate, or an attorney regularly of counsel with his law firm. This statement

shall be supplemented promptly if additional ar-
rangements are made.

(b) Upon a determination that the costs and
litigation expenses of the action cannot reasonably
and fairly be defrayed by the representative par-
ties or by other available sources, the court by
order may authorize and control the solicitation
and expenditure of voluntary contributions for this
purpose from members of the class, advances by
the attorneys or others, or both, subject to reim-
bursement from any recovery obtained for the
class. The court may order any available funds so
contributed or advanced to be applied to the pay-
ment of any costs taxed in favor of a party oppos-
ing the class.

*Section 18. Statute of Limitations.*

The statute of limitations is tolled for all class
members upon the commencement of an action
asserting a class action. The statute of limitations
resumes running against a member of a class:

(1) upon his filing an election of exclusion;

(2) upon entry of an order of certification, or of
an amendment thereof, eliminating him from the
class;

(3) except as to representative parties, upon
entry of an order under Section 2 refusing to
certify the action as a class action; and

(4) upon dismissal of the action without an
adjudication on the merits.

*Section 19. Uniformity of Application and
Construction.*

This rule shall be construed and applied to
effectuate its general purpose to make uniform the

law with respect to the subject of this rule among states enacting it.

*Section 20. Short Title.*

This rule may be cited as the "Uniform Class Actions Rule".

*Section 21. Repeal.*

The following acts and parts of acts are repealed:

*Section 22. Time of Taking Effect.*

This rule shall take effect ⸺.